In re Guardianship and Conservatorship of Linda S. Cordel,
an incapacitated and protected person.
Harry Y. Wolfson, appellant, v. William E.
Seidler, Jr., Guardan and Conservator
of Linda S. Cordel, appellee.
741 N.W.2d 675

Filed November 30, 2007.    No. S-06-591.

Clayton Byam, Thomas F. Hoarty, Jr., and Daniel T. Hoarty, of Byam & Hoarty, for appellant.

W. Matthew Semple, of Seidler & Seidler, P.C., for appellee, and William E. Seidler, Jr., of Seidler & Seidler, P.C., pro se.

Heavican, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

McCormack, J.

## BACKGROUND

Harry Y. Wolfson is the father of Linda S. Cordel, an incapacitated adult, and is also trustee of a trust for her

benefit. Wolfson appeals an order of the county court approving $80,002.81 in fees and expenses for Cordel's guardian and conservator. Wolfson asserts that the county court erred in approving an intermediate account without first conducting an evidentiary hearing, which he had requested. The guardian and conservator asserts that Wolfson lacked standing to intervene in the accounting[1] and to prosecute this appeal.[2]

## FACTS

Cordel is approximately 53 years old and has multiple sclerosis. Her condition makes decisionmaking difficult and requires care in an assisted living facility. Cordel appointed Wolfson as her attorney in fact pursuant to a contingent plenary durable power of attorney.[3] Additionally, it is undisputed that Wolfson is the trustee of a discretionary trust benefiting Cordel, and he voluntarily signed a personal guaranty of the payments for the assisted living facility where Cordel is currently residing.

In October 2002, Cordel's husband petitioned for the appointment of a guardian and conservator for Cordel, nominating himself as guardian and conservator. Wolfson objected to the allegation of need for a guardian or conservator, but cross-petitioned that in the event Cordel were declared incapacitated, Wolfson should be appointed guardian and conservator. The court ultimately appointed an agreed-upon neutral party, William E. Seidler, Jr., as guardian and conservator. Cordel's marriage has since been dissolved.

This appeal concerns the court's approval of an intermediate account of Seidler's fees and expenses. Seidler filed a motion for approval of accounting and fees on March 24, 2006. The motion was accompanied by a sworn affidavit and an attached itemization detailing $80,002.81 in fees and expenses over the previous 4 years. All work relating to the guardianship and conservatorship, including making telephone calls and reviewing bills, was charged at either Seidler's hourly rate of $125 or the

---

[1] See Neb. Rev. Stat. §§ 30-2209(21) (Cum. Supp. 2006) and 30-2645(a) (Reissue 1995).

[2] See Neb. Rev. Stat. § 30-1601 (Cum. Supp. 2006).

[3] See Neb. Rev. Stat. § 49-1515 (Reissue 2004).

lower rates of his legal assistants. The totals were 478.6 hours at $125 per hour, 74.7 hours at $94.38 per hour, and 234.3 hours at $50 per hour. The itemization claimed $631.21 in costs incurred and $781.60 in expenses.

Wolfson filed, as "the father of the Incapacitated and Protected Person and an interested party herein," an objection to the fees and moved the court for an evidentiary hearing on his objection. Seidler filed a motion to strike based on the alleged failure of Wolfson to indicate his standing in the proceedings. A hearing on the motions was held on April 26, 2006. Wolfson's attorney responded to Seidler's motion to strike by arguing at the hearing that Wolfson had standing as a person interested in Cordel's welfare.[4] When a person identified in the record only as "a male voice," presumably Seidler or his attorney, suggested that Wolfson did not have standing, the court said, "Yeah, we've been through it several times; I agree." A "male voice," presumably Wolfson or his attorney, argued that he believed $80,000 was a large sum and that an evidentiary hearing should be held to determine whether that amount was fair and reasonable. The court, without receiving any evidence or listening to any testimony or argument regarding the reasonableness of the fees, approved the fees. The court concluded: "Well, it'll be appealed no matter what their [sic] ruling is, because [Wolfson] is not going to agree to pay . . . Seidler; never wanted to in the first place. I'm going to show your objection is made and it's overruled. The fees are approved." A written order was issued that same day approving the fees, but indicating, on a standardized form, that "no objections to the accounting (or allowance of fees) has/have been filed." Wolfson appeals.

## ASSIGNMENT OF ERROR

Wolfson assigns that the county court erred when it granted Seidler's application for fees without receiving any evidence as to the reasonableness of the fee application and without holding an evidentiary hearing on the fee application.

---

[4] See § 30-2209(21).

## STANDARD OF REVIEW

■■■ An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.[5] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6]

■■■ The question of jurisdiction is a question of law.[7] The meaning of a statute is also a question of law.[8] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[9]

## ANALYSIS

The county court's April 26, 2006, order did not specifically address Wolfson's motion for an evidentiary hearing, but approved the intermediate account after stating that "no objections" were filed. While the court stated at the hearing that Wolfson's objection was "overruled," the court also indicated it did not believe Wolfson had standing to object. Based on the record before us, we conclude that the basis of the county court's decision was its conclusion that Wolfson lacked standing to intervene to request an evidentiary hearing.

Wolfson asserts that in his personal capacity and in his capacity as the trustee of a trust of which Cordel is a beneficiary, he has standing to intervene in the intermediate account because he is an "[i]nterested person" to the proceedings as defined in § 30-2209(21), which states in full:

> Interested person includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may

---

[5] See *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004).

[6] *Id.*

[7] *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001).

[8] *In re Estate of Nemetz*, 273 Neb. 918, 735 N.W.2d 363 (2007).

[9] *In re Estate of Mousel*, 271 Neb. 628, 715 N.W.2d 490 (2006).

be affected by the proceeding. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

Wolfson also asserts that he has standing as a "person interested in the welfare" of Cordel, a protected person, as provided for in § 30-2645(a). Section 30-2645, entitled "Petitions for orders subsequent to appointment," states:

> (a) Any person interested in the welfare of a person for whom a conservator has been appointed may file a petition in the appointing court for an order (1) requiring bond or security or additional bond or security, or reducing bond, (2) requiring an accounting for the administration of the trust, (3) directing distribution, (4) removing the conservator and appointing a temporary or successor conservator, or (5) granting other appropriate relief.

Seidler argues that Wolfson does not have standing to ask for an evidentiary hearing. Seidler asserts that the "[a]ny person interested" language of § 30-2645(a) is constrained by the definition of "[i]nterested person" in § 30-2209(21). Seidler argues that § 30-2209(21) is narrowly limited to the categories of persons specifically listed. According to Seidler, Wolfson does not qualify under any of these categories.

In *In re Guardianship of Gilmore*,[10] the Nebraska Court of Appeals considered whether the Department of Health and Human Services had standing to petition for the removal of a guardian. The court noted that the part of § 30-2209(21) which states that the meaning of "interested person" would vary from time to time, and be determined according to the particular purposes of and matter involved in any proceeding, "would appear to give that otherwise narrow definition considerable breadth."[11] Ultimately, though, the court relied on a provision which gave

---

[10] *In re Guardianship of Gilmore*, 11 Neb. App. 876, 662 N.W.2d 221 (2003).

[11] *Id.* at 881, 662 N.W.2d at 225.

standing to petition for removal of a guardian to "'any person interested in [the] welfare'" of the ward.[12] The court found the phrase "any person interested," although not specifically defined in the probate code, to be broader than the definition of "interested person" contained in § 30-2209(21).

The court in *In re Guardianship of Gilmore* noted that the phrase "person interested in the welfare" of a protected person appears only in those statutes dealing with protected persons. The court concluded that the phrase showed a legislative intent "to allow persons who are interested in a protected person, but who do not satisfy the definition of 'interested person,' to bring matters affecting the welfare of protected persons to the attention of the local probate court."[13] In other words, the statutes referring to "any person interested in the welfare" of a protected person "are worded to allow people without a legal interest to bring the matter to the local court's attention."[14]

In *In re Conservatorship of Kloss*,[15] the Supreme Court of Montana similarly considered the meaning of "'*any* person who is interested in [the protected person's] welfare,'" in a statute specifying who had standing to petition for the appointment of a conservator. The court held that an attorney who sought to intervene was not required to have a personal stake in the outcome in order to have standing. While other statutory provisions relating to conservatorships contained "interested person" terminology similar to that contained in § 30-2209(21), the court stated that it refused to limit the language of the more specific statute with the narrower definition of "interested person." The court noted that the narrower definition of "interested person" stated that its meaning "'may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding'" and found the statutory provision for "'any person who is interested'" in the welfare

---

[12] *Id.*

[13] *Id.* at 881-82, 662 N.W.2d at 225-26.

[14] See *id.* at 882, 662 N.W.2d at 226.

[15] *In re Conservatorship of Kloss*, 326 Mont. 117, 119, 109 P.3d 205, 207 (2005) (emphasis in original).

of the protected person to be more directly relevant.[16] This, the court concluded, reflected the Legislature's intent to broadly define those who have standing to petition the court on behalf of another.[17]

We agree with the foregoing analysis. We note that the term "interested person" is found primarily in provisions of the probate code relating to the administration of decedents' estates.[18] In contrast, the "[a]ny person interested in the welfare" language of § 30-2645(a) is found only in statutes concerning the welfare of an incapacitated person. This departure from the financial interests specified in § 30-2209(21) is appropriate, given the different focus of proceedings involving protected persons.

■ We thus conclude that Wolfson's standing to intervene in his daughter's guardianship and conservatorship is not limited to one of the narrow categories listed in § 30-2209(21). In construing a statute, we will give the statute its plain and ordinary meaning and we will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[19] The plain meaning of § 30-2645(a) is evident: "*Any* person interested in the welfare of a person for whom a conservator has been appointed" has standing to intervene. (Emphasis supplied.) To limit the persons "interested in the welfare" of the protected person to those listed in § 30-2209(21) would be superfluous and incongruent with the term "any."[20] It would also be contrary to the language of § 30-2209(21) itself, which specifically states that the meaning of an "[i]nterested person" may vary.

---

[16] *Id.* at 120, 109 P.3d at 207.

[17] See *id.* See, also, *In re Estate of Edwards*, 794 P.2d 1092 (Colo. App. 1990).

[18] See Neb. Rev. Stat. §§ 30-2220 and 30-2467 (Cum. Supp. 2006) and 30-2325, 30-2356, 30-2406, 30-2410, 30-2416, 30-2421, 30-2425, 30-2427, 30-2432, 30-2438, 30-2440, 30-2443, 30-2445 through 30-2450, 30-2457, 30-2473, 30-2474, 30-2476, 30-2482, 30-24,103, 30-24,122, and 30-24,124 (Reissue 1995).

[19] See *Japp v. Papio-Missouri River NRD*, 273 Neb. 779, 733 N.W.2d 551 (2007).

[20] See § 30-2645(a).

Seidler next argues that even if § 30-2645(a) is interpreted broadly, Wolfson failed to demonstrate his interest in Cordel's welfare. The Court of Appeals in *In re Guardianship of Gilmore*[21] stated that "the county judge, under the applicable standard of review, can make the determination of whether the petitioner is really interested in the welfare of the person subject to the proceedings." Seidler concedes that "a father is quite likely interested in the welfare of his child."[22] He reads *In re Guardianship of Gilmore*, however, as stating that this interest must be independently evidenced by the record, regardless of whether the genuine interest was challenged below. Seidler then points out that there was no evidence offered or received at the April 26, 2006, hearing before the county court.

The fact that someone is the parent of the protected person would normally be strong evidence of interest in the protected person's welfare. Parents are specifically given standing for other proceedings such as the appointment of a guardian,[23] appointment of a conservator, or other protective order.[24] In addition, Neb. Rev. Stat. § 30-2654(a)(1) (Reissue 1995) states that the conservator, after appointment, is to "consider recommendations relating to the appropriate standard of support, education and benefit for the protected person made by a parent." Still, we agree with Seidler that under § 30-2645(a), being a parent of the protected person does not guarantee standing.

We disagree, however, with Seidler that standing was properly denied in this case. Wolfson cannot be prejudiced for the failure to present evidence on standing when the very issue Wolfson complains of is the county court's refusal to grant Wolfson's request for an evidentiary hearing. Seidler's only challenge to Wolfson's standing was made the day the court heard the motions. Seidler made no specific allegation nor

---

[21] *In re Guardianship of Gilmore, supra* note 10, 11 Neb. App. at 882, 662 N.W.2d at 226.

[22] Brief for appellee at 16.

[23] Neb. Rev. Stat. §§ 30-2617 (Reissue 1995) and 30-2625 and 30-2627 (Cum. Supp. 2006).

[24] Neb. Rev. Stat. §§ 30-2633, 30-2634, and 30-2639 (Cum. Supp. 2006).

presented evidence indicating that Wolfson was not, in fact, interested in Cordel's welfare.

It is unclear from this record whether the county court would have granted Wolfson's request for an evidentiary hearing had it found Wolfson to have standing. But we note that we have previously disapproved of a probate court's practice of holding informal discussion instead of an evidentiary hearing. We have, in other circumstances, vacated orders for lack of competent evidence because an evidentiary hearing was not held.[25] We have not specifically addressed intermediate accounts, but Neb. Rev. Stat. § 30-2648 (Reissue 1995) states in relevant part that "[s]ubject to appeal or vacation within the time permitted, an order, *made upon notice and hearing, allowing an intermediate account of a conservator*, adjudicates as to his liabilities concerning the matters considered in connection therewith." (Emphasis supplied.)

The allowance of conservator fees is largely a matter of discretion, and the reasonable value of services is a question of fact.[26] But the deference granted to the county court is based on the fact that it had the opportunity to observe the witnesses and evaluate their credibility.[27] In considering language similar to that of § 30-2648, the court in *In re Trust Created by Will of Enger* explained:

> A requirement of "hearing" in judicial proceedings, aside from any constitutional requirement of due process, by common consent presupposes a proceeding before a competent tribunal for the trial of issues between adversary parties, the presentation and consideration of proofs and

---

[25] See *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005). See, also, *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006); *In re Guardianship & Conservatorship of Trobough*, *supra* note 5.

[26] *In re Conservatorship of Mansur*, 367 N.W.2d 550 (Minn. App. 1985). See, also, Neb. Rev. Stat. § 30-2643 (Cum. Supp. 2006); *In re Guardianship & Conservatorship of Karin P.*, 271 Neb. 917, 716 N.W.2d 681 (2006) (whether guardian ad litem fees were reasonable depended on equities and circumstances of each particular case).

[27] See *In re Conservatorship of Mansur*, *supra* note 26.

arguments, and determinative action by the tribunal with respect to the questions raised by the issues presented.[28] ■ We conclude that pursuant to § 30-2648, there is no final adjudication of an intermediate account without an evidentiary hearing. Because no hearing was held in this case, the court shall, after remand, hold a hearing regarding Seidler's fees and expenses.

## CONCLUSION

The county court's dismissal of Wolfson for lack of standing is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[28] *In re Trust Created by Will of Enger*, 225 Minn. 229, 237-38, 30 N.W.2d 694, 700 (1948). See, also, *Guardianship of Estate of Slakmon*, 83 Cal. App. 3d 224, 147 Cal. Rptr. 777 (1978).