763 N.W.2d 71 (2009)
277 Neb. 465
In re CONSERVATORSHIP OF Carol A. GIBILISCO, a protected person.
Popular Financial Services, L.L.C., a Delaware corporation, Appellee,
v.
Tommy Joe Stutzka, Conservator, Appellant.
No. S-08-502.
Supreme Court of Nebraska.
March 27, 2009.
*72 James Polack, P.C., L.L.O., Omaha, for appellant.
Matthew E. Eck and Donald J. Pavelka, Jr., of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Tommy Joe Stutzka, as conservator of Carol A. Gibilisco, appeals the order of the county court for Douglas County allowing the claim of Popular Financial Services, L.L.C. (Popular), and ordering Stutzka to pay $85,000 to Popular. The claim was based on a judgment obtained in the U.S. District Court for the District of Nebraska in which the court directed, as part of a comprehensive order of rescission, that Gibilisco remit to Popular the sum of $85,000, without interest. Stutzka claims that due to the "probate exception" doctrine, the federal court exceeded its subject matter jurisdiction and that its judgment and the claim based thereon are not valid. Because we conclude that the "probate exception" is not applicable, we affirm the order of the county court allowing Popular's claim.

STATEMENT OF FACTS
Stutzka was appointed as Gibilisco's conservator in February 2002. Gibilisco was a widow in her sixties who had been blind since birth and was developmentally disabled.
Shortly after being appointed conservator, Stutzka, as conservator for Gibilisco, filed an action in the U.S. District Court for the District of Nebraska and named James P. McCarville, Cheryl Nord-McCarville, James Walters, and Popular as defendants. The various causes of actions arose out of certain loan transactions involving Gibilisco, her husband, and the defendants in the 1990's and early 2000's.
In sum, in 1999, McCarville and Nord-McCarville persuaded Gibilisco and her husband to obtain a home equity loan on a house the Gibiliscos owned on Hickory Street in Omaha, Nebraska, and to use the loan proceeds to purchase equipment for *73 the business. Walters acted as a mortgage broker for the transaction. The Gibiliscos obtained a $55,000 loan from U.S. Bank, and later opened a line of credit with U.S. Bank that had an approved limit of $25,000. The Gibiliscos thought the McCarvilles would make the payments on the loans, but after a few months, U.S. Bank informed the Gibiliscos that the loans were in default.
After Gibilisco's husband died in 2001, Walters worked with Gibilisco to refinance the U.S. Bank loans by obtaining an $85,000 loan from Popular. Walters made various misstatements in the application for the loan. The Popular loan named Nord-McCarville as borrower and Gibilisco as coborrower. As part of this transaction, Gibilisco signed a deed conveying the Hickory Street property to herself and Nord-McCarville jointly. The proceeds of the Popular loan were used to pay off the U.S. Bank loan and line of credit.
In the action filed in federal court in 2002, Stutzka asserted violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (2006), and of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. (2006). He also asserted civil conspiracy. Stutzka sought to rescind the deed, promissory note, and deed of trust related to the Popular loan; to quiet title in the Hickory Street property in Gibilisco's name; and to obtain a temporary restraining order.
Following trial, the U.S. District Court filed its findings of fact and conclusions of law on May 21, 2004. The court concluded, inter alia, that it had jurisdiction of the matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction) (2006). The court also concluded that judgment should be entered in favor of Stutzka as conservator and against the defendants on at least part of the claims. The court concluded that the "appropriate remedy is rescission, which encompasses the parties' return to the pre-transaction status quo. Kracl v. Loseke, [236 Neb. 290,] 461 N.W.2d 67, 76 (Neb. 1990)."
On June 21, 2004, the court entered judgment in favor of Stutzka and against the defendants and ordered, inter alia, that the Popular loan agreement be rescinded, that the deed from Gibilisco to Gibilisco and Nord-McCarville jointly be declared null and void, that title to the Hickory Street property be quieted in Gibilisco, and that the promissory note and deed of trust be reformed to remove Gibilisco as a borrower. The court further indicated in its judgment that "Gibilisco shall remit to Popular the sum of $85,000, without interest."
Stutzka appealed the U.S. District Court judgment to the Court of Appeals for the Eighth Circuit. Stutzka asserted, inter alia, that the U.S. District Court erred by ordering Gibilisco to remit $85,000 to Popular. Stutzka did not argue to the Eighth Circuit that the U.S. District Court lacked jurisdiction to enter the order. Instead, he argued other errors that the Eighth Circuit rejected in part. The Eighth Circuit concluded, inter alia, that because Nebraska law is clear that rescission requires a return to the status quo, the U.S. District Court did not err in ordering Gibilisco to repay the $85,000 to Popular. Stutzka v. McCarville, 420 F.3d 757 (8th Cir.2005). The Eighth Circuit affirmed the portion of the order requiring Gibilisco to pay $85,000 to Popular, but reversed other portions of the order and remanded the matter for further proceedings on issues not relevant to the present case. The remaining issues were resolved by the U.S. District Court, and the U.S. District Court's decision thereon was affirmed by the Eighth Circuit. Stutzka v. McCarville, 243 Fed.Appx. 195 (8th Cir.2007).
*74 Popular transcribed the U.S. District Court judgment to the district court for Douglas County. On October 24, 2007, the district court stayed its proceedings pending resolution of a claim Popular would file in the county court for Douglas County. On November 9, Popular filed in the county court a "Notice of Claim/Judgment and Motion for Order of Payment of Claim/Judgment." Popular requested an order requiring Gibilisco's conservator to satisfy the $85,000 judgment entered against Gibilisco.
On January 4, 2008, Stutzka filed in the county court and mailed to Popular a notice of disallowance of claim. On January 11, Popular filed a petition for allowance of claim in the county court. Although it was not specified in the petition, it appears that the petition was filed under Neb.Rev.Stat. § 30-2657 (Reissue 2008), which provides that a "conservator must pay from the estate all just claims against the estate and against the protected person" and that a "claimant whose claim has not been paid may petition the court for determination of his claim at any time before it is barred by the applicable statute of limitation and, upon due proof, procure an order for its allowance and payment from the estate." On April 23, the county court entered an order granting Popular's petition for allowance of claim. This county court order is the subject of the present appeal.
In rendering its order of April 23, 2008, the county court rejected Stutzka's argument that the U.S. District Court lacked jurisdiction to order Gibilisco to pay $85,000 to Popular. Stutzka had argued that the order was in violation of the "probate exception" set forth in Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). Stutzka argued that by ordering Gibilisco to remit $85,000 to Popular, the U.S. District Court improperly exercised control over Gibilisco's property. The county court noted that Stutzka was the party who filed the action in federal court; that Stutzka requested rescission of the mortgage; that the federal court granted Stutzka the rescission he requested; and that under Nebraska law, in ordering rescission, a court must require all parties to return whatever they acquired under the rescinded document. The county court determined that a necessary part of the rescission of the mortgage was that Gibilisco pay back the proceeds she had received from the loan. The county court further concluded that because the U.S. District Court had jurisdiction over the suit filed by Stutzka, Stutzka was bound by the judgment entered by the U.S. District Court and was barred from collaterally attacking the validity of that judgment in the county court. As noted, the county court granted Popular's petition for allowance of claim and ordered Stutzka as conservator to pay Popular $85,000 without interest.
Stutzka appeals the order of the county court.

ASSIGNMENT OF ERROR
Stutzka asserts that the county court erred in ordering him to pay Popular $85,000. He claims that the U.S. District Court exceeded its subject matter jurisdiction when it directed that Gibilisco remit $85,000 to Popular and that the judgment on such order did not amount to an allowable claim.

STANDARDS OF REVIEW
An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. In re Guardianship & Conservatorship of Cordel, 274 Neb. 545, 741 N.W.2d 675 (2007). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry *75 is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id.
The question of jurisdiction is a question of law. Id. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. Id.

ANALYSIS
Stutzka claims that because of the "probate exception" to federal jurisdiction, the U.S. District Court lacked subject matter jurisdiction to order that "`Gibilisco... remit the sum of $85,000 to Popular Bank'" and that Popular's claim for allowance based on the federal judgment should therefore be disallowed. We conclude that the probate exception does not apply to the action that Stutzka brought in federal court, that the U.S. District Court had jurisdiction to enter its order, and that Popular's claim was properly allowed by the county court.
In Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946), the U.S. Supreme Court set forth the probate exception to federal jurisdiction, pursuant to which the federal trial courts are barred from exercising jurisdiction in certain circumstances. In Markham, the Court stated that "a federal court has no jurisdiction to probate a will or administer an estate" and that "a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court." 326 U.S. at 494, 66 S.Ct. 296. However, notwithstanding the probate exception, the Court stated that federal courts retained jurisdiction over suits by claimants against an estate to establish claims "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court" and that a federal court "may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." Id.
The U.S. Supreme Court refined the scope of the probate exception in Marshall v. Marshall, 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). In Marshall, the Court described the probate exception as being "of distinctly limited scope." 547 U.S. at 310, 126 S.Ct. 1735. The court stated that
the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.
547 U.S. at 311-12, 126 S.Ct. 1735. The Court concluded that the claim at issue in Marshall did not involve the administration of an estate, the probate of a will, or any other purely probate matter, but, instead, that the claim alleged "a widely recognized tort" and that "[t]rial courts, both federal and state, often address conduct of the kind" alleged. 547 U.S. at 312, 126 S.Ct. 1735.
For completeness, we digress to comment on outstanding issues regarding the probate exception and the use of the word "probate" in Nebraska jurisprudence. We are aware that after Marshall, certain questions remain regarding the breadth and applicability of the probate exception. We recognize that there is some question *76 whether the probate exception is applicable to federal cases based on federal question jurisdiction. See Allison Elvert Graves, Comment, Marshall v. Marshall: The Past, Present, and Future of the Probate Exception to Federal Jurisdiction, 59 Ala. L.Rev. 1643 (2008). For purposes of this opinion, we assume that the probate exception applies to federal cases based on federal question jurisdiction. Jones v. Brennan, 465 F.3d 304 (7th Cir.2006). We are also aware that whether the probate exception applies to will substitutes, such as trusts, appears to be an unresolved question. See Graves, supra.
More fundamentally, there is a question whether the probate exception is even relevant to a conservatorship case involving a protected person as distinguished from a matter involving a decedent. See Clifford v. Premier Housing, Inc., No. 06-1111-MLB, 2006 WL 2710338 (D.Kan. Sept. 20, 2006) (concluding that probate exception is not applicable to case involving contract for purchase of home and return of downpayment in action filed by conservator). It appears that federal cases and commentators restrict discussion of the probate exception to cases involving decedents. Peter Nicholas, Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction, 74 S. Cal. L.Rev. 1479 (2001). However, given the indistinct use of the word "probate" in general and in Nebraska jurisprudence in particular, we will assume strictly for purposes of discussion in this case, as urged by the parties, that the federal probate exception is relevant to the analysis of this conservatorship case. In this regard, we note that in Nebraska statutes, the definitions of a "[c]laim" involving a protected person, the "[c]ourt" handling a conservatorship, and the "[c]onservator" are all found in chapter 30, article 22, of the Nebraska Revised Statutes entitled "Probate Jurisdiction." See Neb.Rev.Stat. § 30-2209(4), (5), and (6) (Reissue 2008). Our cases have referred to guardianship issues as being "probate" matters, see In re Guardianship of Zyla, 251 Neb. 163, 164, 555 N.W.2d 768, 770 (1996), and a conservator's duties as being controlled by the probate code, see In re Conservatorship of Estate of Martin, 228 Neb. 103, 421 N.W.2d 463 (1988). More recently, however, we have distinguished between conservatorship proceedings and probate proceedings, the latter involving issues pertaining to a decedent's estate. See In re Guardianship & Conservatorship of Trobough, 267 Neb. 661, 676 N.W.2d 364 (2004).
Applying the definitions set forth in Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946), and Marshall v. Marshall, 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006), and given our caveat and assumptions noted immediately above, we conclude that the action Stutzka brought in federal court to adjudicate the rights of the parties did not, to the extent it is applicable, fall under the probate exception. As described recently in Marshall, the probate exception is of limited scope and applies only to (1) the probate or annulment of a will, (2) the administration of a decedent's estate, and (3) the disposition of property in the custody of a state probate court. We apply these three descriptions to the facts of this case.
Stutzka filed the action in federal court as the conservator for a person under a disability, and not involving a decedent. Stutzka was not raising issues in federal court related to a will or a decedent's estate. Therefore, the federal court action did not involve the probate or annulment of a will or the administration of a decedent's estate. Further, the action filed by Stutzka in federal court did not involve the disposition of property in the custody of a state court. The federal court was asked to, and did, adjudicate the rights of the *77 partiesnot to dispose of specific property. As we read Markham and Marshall, the adjudication of rights is a proper subject matter of federal jurisdiction. The federal court granted Stutzka's request for the rescission of the Popular loan agreement and ordered that the parties be returned to the status quo that existed prior to the transaction. In order to effect the return to the status quo, and as an incident thereto, the court ordered that Gibilisco should return to Popular the proceeds of the loan received from Popular. Such direction did not involve the federal court directly in the disposition of property under the control of a state court. The judgment of the federal court was not outside the court's subject matter jurisdiction, and we reject Stutzka's argument to the contrary.
The aspect of the federal judgment which indicated that Gibilisco should pay Popular $85,000 became a liability of Gibilisco and, as such, the proper subject matter of a "claim." See § 30-2209(4). Because it was a valid claim against Gibilisco, Stutzka, as conservator, was required to pay such claim under § 30-2657. The county court therefore did not err in granting Popular's petition for allowance of the claim and in ordering Stutzka to pay the claim to Popular.

CONCLUSION
We conclude that the probate exception did not apply to the action that Stutzka brought in federal court, and we reject Stutzka's argument that the U.S. District Court lacked subject matter jurisdiction to enter its judgment. The county court did not err in allowing Popular's claim based on the federal court judgment. We affirm.
AFFIRMED.