Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/28/2019 09:07 AM CDT

- 186 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

In re Guardianship and Conservatorship of
Inez Natalia Stierstorfer, an alleged
incapacitated and protected person.
Megan Malloy, appellee and cross-appellant, v.
Inez Natalia Stierstorfer, appellant and
cross-appellee, and Mark Malousek,
Conservator, et al., appellees.

___ N.W.2d ___

Filed May 7, 2019.    No. A-17-1232.

1. **Guardians and Conservators: Appeal and Error.** An appellate court
   reviews guardianship and conservatorship proceedings for error appear-
   ing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   appearing on the record, an appellate court's inquiry is whether the
   decision conforms to the law, is supported by competent evidence, and
   is neither arbitrary, capricious, nor unreasonable.
3. **Guardians and Conservators: Evidence.** A court may appoint a
   guardian under Neb. Rev. Stat. § 30-2620(a) (Reissue 2016) if it is
   satisfied by clear and convincing evidence that (1) the person for
   whom a guardian is sought is incapacitated and (2) the appointment
   is necessary or desirable as the least restrictive alternative available
   for providing continuing care or supervision of the person alleged to
   be incapacitated.
4. **Appeal and Error.** An appellate court is not obligated to engage in an
   analysis that is not necessary to adjudicate the case and controversy
   before it.

Appeal from the County Court for Douglas County: John E.
Huber, Judge. Affirmed.

D.C. "Woody" Bradford III and Ryan J. Dougherty, of
Houghton, Bradford & Whitted, P.C., L.L.O., for appellant.

- 187 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

Molly M. Blazek and Alex J. McCarty, Senior Certified Law Student, of Blazek Law Group, L.L.C., for appellee Megan Malloy.

Pirtle, Riedmann, and Welch, Judges.

Pirtle, Judge.

## INTRODUCTION

Inez Natalia Stierstorfer appeals from an order of the Douglas County Court which appointed a conservator for her. Megan Malloy cross-appeals, challenging the court's refusal to appoint a guardian for Stierstorfer. Based on the reasons that follow, we affirm.

## BACKGROUND

On May 15, 2017, Malloy, Stierstorfer's granddaughter, filed a petition for the appointment of an emergency temporary guardian and the appointment of a permanent guardian and conservator for Stierstorfer. The petition nominated Malloy to serve as guardian and conservator. On the same day, the trial court entered an order appointing Malloy as temporary guardian. On May 30, an expedited hearing was held at the request of Stierstorfer. At the hearing, the trial court removed Malloy as temporary guardian and appointed Christine Solis Sahebjamii, Stierstorfer's niece, as temporary guardian until a trial could be held.

Trial took place in July and August 2017. The evidence showed that Stierstorfer was 80 years old at the time the petition for conservatorship and guardianship was filed. Stierstorfer has two daughters, Inez Elvira Stierstorfer and Renate Stierstorfer Campbell. Malloy is Inez Elvira's daughter.

Stierstorfer's husband became ill around December 2015 and died on August 3, 2016. During the fall of 2016, arrangements were made with an attorney to prepare a financial power of attorney and a health care power of attorney for Stierstorfer, both of which were signed on November 21, 2016. The financial power of attorney and the health care power of

- 188 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

attorney each named Malloy and Campbell as Stierstorfer's attorneys in fact.

On February 9, 2017, Stierstorfer was evaluated by Dr. Heather Morgan, who specializes in geriatric medicine. Morgan diagnosed Stierstorfer with "[d]ementia related to Alzheimer's disease" with paranoia, as well as anxiety. She concluded that Stierstorfer was unable to independently perform all of her instrumental activities of daily living and that Stierstorfer required supervision and some assistance with her activities of daily living. Morgan further opined that given Stierstorfer's cognitive and functional impairments, she was no longer capable of safely managing her financial and business affairs and was also incapable of making informed decisions about her health care and general well-being. Morgan recommended that Stierstorfer be placed in a facility with a "memory care unit" and that her health care power of attorney be activated. At the time of Morgan's evaluation, Stierstorfer was living in the home she had shared with her husband before he died.

As a result of Malloy's and Campbell's appointment as Stierstorfer's attorneys in fact, they complied with Morgan's recommendation and moved Stierstorfer into a facility with a memory care unit on March 20, 2017, choosing Parsons House for such care. Subsequent to Stierstorfer's move to Parsons House, Malloy and Campbell engaged an attorney's services to establish a plan to preserve Stierstorfer's assets. To implement such planning, an annuity was purchased to supplement the cost of care at Parsons House for at least 5 years. The planning also included transferring Stierstorfer's assets out of her name into a family trust, with Malloy and Campbell as trustees. The trust was created so that Stierstorfer's assets could continue to be used for her care and lifestyle and would not have to be spent down as a requirement for her eligibility for Medicaid. The planning also included a transfer of Stierstorfer's home by quitclaim deed to Malloy and Campbell.

- 189 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

Stierstorfer was unhappy with her placement at Parsons House, which placement was not discussed with her before she was moved there, and in May 2017, she had a priest pick her up at Parsons House and she contacted an attorney.

On May 18, 2017, 3 days after the petition for appointment of a guardian and conservator was filed, Stierstorfer underwent an evaluation by Dr. Robert G. Arias, a clinical psychologist and neuropsychologist, to assess her cognitive state, whether she had dementia or not, and whether she was capable of functioning on her own without a power of attorney or legal guardian. As a result of the evaluation, Arias concluded that Stierstorfer did not appear to be mentally incapacitated in terms of having dementia, incoherence, confusion, or problems with reasoning and that from a strictly cognitive standpoint, she seemed capable of independent living, financial management, and medication management. Arias further concluded that Stierstorfer seemed capable of making responsible decisions, had no cognitive impairment, and had no pattern of paranoid behavior. He testified that Stierstorfer did not present as in need of a guardian, a conservator, or an appointed power of attorney.

Several witnesses, including Malloy, Campbell, and Campbell's husband testified that prior to Stierstorfer's husband's getting sick and during the time he was sick, Stierstorfer had gotten increasingly paranoid. She believed people, including family members and neighbors, were breaking into her house and moving things around, going through her mail, and stealing from her. She also believed that a neighbor was spying on her through her bathroom skylight and that another neighbor had "bugged" her telephone and was listening to her conversations. Stierstorfer also was not taking care of her home, and it became increasingly dirty and cluttered. There was pet urine and feces throughout the house, there were "piles of junk" throughout the house, there was food "in various states of mold," there was a bathtub full of urine-soaked

- 190 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

cat litter, and the home had a stench of "decay, pet dander, and pet feces."

After her husband got sick, Stierstorfer was also unable to manage the payment of bills, had fallen behind on her mortgage, and was misplacing her wallet and checkbook. Stierstorfer had piles of mail in her home and would not or could not distinguish between what was a bill that needed attention and what was junk mail. Malloy testified that Stierstorfer would call her in a state of panic saying she was receiving final notices and communication from debt collectors. Malloy testified that the family was unable to assist Stierstorfer with writing checks to pay bills because Stierstorfer frequently lost her checkbook. There was also testimony that Stierstorfer had discontinued using her prescription eye drops for glaucoma and had not seen her eye doctor in several years.

Stierstorfer testified and disagreed with the condition of her home as described by witnesses. She believed Malloy and Campbell put the trash and pet urine and feces in her home to make it appear that she was incapable of taking care of herself and her home. She also testified that in the past, she believed her neighbor was coming into her home in the middle of the night and stealing her mail. She testified that she now believed Malloy had been taking the mail to "incriminate [her]," explaining that Malloy was trying to make it appear that Stierstorfer had dementia.

Sahebjamii, Stierstorfer's niece, testified that Stierstorfer had been living in an apartment at an independent-living facility and that she had been staying with her since her appointment as temporary guardian on May 30, 2017. She testified about Stierstorfer's daily routine at the retirement home and testified that she was able to function without assistance throughout her day and meet her own basic needs. For example, she testified that Stierstorfer got herself ready in the morning and ready for bed in the evening, went to meals in the dining area on her own, did her own laundry, participated in activities offered at the facility, and utilized the transportation offered by the

- 191 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

facility. Sahebjamii also testified that Stierstorfer had seen her ophthalmologist four times since May 30 for her glaucoma and had been using her prescribed eye drops regularly.

Following trial, the court entered an order on August 23, 2017, finding there was substantial evidence that during a period of time when Stierstorfer's husband was sick and subsequently died, Stierstorfer was unable to provide for her basic needs. It further found, based on the testimony of Sahebjamii and Arias, that at the time of trial Stierstorfer was in an appropriate facility and was able to meet her own basic needs. It noted that she was not living in her own home and no longer had animals which were a problem for her in maintaining her home. The court denied the motion to appoint a guardian for Stierstorfer. The court also found that there was substantial evidence that Stierstorfer had been unable to manage her financial affairs for a substantial period of time and was in need of a conservator to assist in the managing of her financial affairs. Therefore, it granted the motion to appoint a conservator, but further found that Malloy and Campbell were not appropriate and qualified persons to be appointed.

On September 1, 2017, Stierstorfer filed a motion to reconsider the appointment of a conservator. Malloy subsequently filed a petition for the appointment of an emergency temporary guardian, which the court granted.

Following a hearing on Stierstorfer's motion, the trial court entered an order denying the motion to reconsider the appointment of a conservator, terminating the temporary guardianship, and naming Mark Malousek as conservator. This appeal followed.

## ASSIGNMENTS OF ERROR

Stierstorfer assigns that the trial court erred in (1) determining that there was substantial evidence that she had been unable to manage her financial affairs for a substantial period of time and (2) appointing a conservator for her. Stierstorfer does not assign error with respect to the court's ruling on her motion to reconsider.

- 192 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

On cross-appeal, Malloy assigns that the trial court erred in (1) failing to find there was clear and convincing evidence that Stierstorfer required the appointment of a guardian, (2) failing to find Stierstorfer required a full guardianship, and (3) failing to appoint a guardian for Stierstorfer.

## STANDARD OF REVIEW

[1,2] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

*Conservatorship.*

Stierstorfer argues that the trial court erred in determining that there was substantial evidence that she had been unable to manage her financial affairs for a substantial period of time and as a result, finding that she was in need of a conservator. She contends that the court failed to identify any evidence it considered in determining she was unable to manage her financial affairs and that the record lacks evidence to support this determination.

The power of the county court to appoint a conservator for an adult is governed by Neb. Rev. Stat. § 30-2630(2) (Reissue 2016), which provides:

> Appointment of a conservator or other protective order may be made in relation to the estate and property affairs of a person if the court is satisfied by clear and convincing evidence that (i) the person is unable to manage his or her property and property affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, or lack of discretion in managing benefits

- 193 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

received from public funds, detention by a foreign power, or disappearance; and (ii) the person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by him or her and that protection is necessary or desirable to obtain or provide funds.

Stierstorfer argues that Arias' testimony clearly established that the appointment of a conservator was not necessary. Arias found that Stierstorfer was capable of making responsible decisions regarding person and property, was not in need of a guardian or a conservator, and was capable of independent living, financial management, and medication management. However, Morgan concluded that due to Stierstorfer's diagnosis of dementia related to Alzheimer's disease, she could no longer manage her financial and business affairs.

In addition to Morgan's opinion, there was competent evidence to show that Stierstorfer could not manage her finances from the time her husband got sick to the time of trial. Several family members testified about Stierstorfer's inability to manage her property affairs effectively. There was testimony that she did not keep her bills organized and did not know what bills needed to be paid or how to pay them. She would also lose or misplace bills, and her family would then need to make calls to such places as the bank and utility companies to try to find out what bills were due. However, Stierstorfer also frequently lost her purse and checkbook, which also made it difficult for family members to help her write checks and pay bills. Family members also tried to help Stierstorfer consolidate her bank accounts in an effort to simplify her finances. Campbell's husband testified that Stierstorfer was not amenable to such consolidation effort, and he did not think she really understood the concept.

The evidence also supports a finding that Stierstorfer had assets that would be wasted or dissipated unless proper management was provided. Stierstorfer had income from Social

- 194 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

Security, a pension, and the annuity that was purchased as part of the asset preservation planning. The annuity itself pays out over $2,700 per month that is deposited into Stierstorfer's checking account.

Based on the record before us, there was competent evidence to support a finding that Stierstorfer was unable to manage her assets and that she has property that will be wasted or dissipated without the appointment of a conservator. Therefore, the trial court did not err in appointing a conservator for Stierstorfer.

*Guardianship.*

On cross-appeal, Malloy argues that the court erred in failing to appoint a guardian for Stierstorfer and that a full guardianship was warranted.

[3] A court may appoint a guardian under Neb. Rev. Stat. § 30-2620(a) (Reissue 2016) if it is satisfied by clear and convincing evidence that (1) the person for whom a guardian is sought is incapacitated and (2) the appointment is necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of the person alleged to be incapacitated. *In re Guardianship & Conservatorship of Mueller*, 23 Neb. App. 430, 872 N.W.2d 906 (2015). An incapacitated person means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent that the person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning himself or herself. Neb. Rev. Stat. § 30-2601(1) (Reissue 2016).

Upon our review of the record, there is competent evidence to support the trial court's finding that appointment of a guardian for Stierstorfer was not necessary. Although Stierstorfer had paranoid behavior before and after her husband's death and was living in a filthy home, the court found that the problems caused by her home and her animals had been remedied.

- 195 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE GUARDIANSHIP & CONSERVATORSHIP OF STIERSTORFER
Cite as 27 Neb. App. 186

At the time of trial, she was living in an apartment at a retirement community where she was happy and getting along well. Sahebjamii testified about Stierstorfer's daily routine at the retirement home, describing how she was able to function without assistance throughout her day and meet her own basic needs. Sahebjamii also testified that Stierstorfer had seen her ophthalmologist for her glaucoma four times since Sahebjamii was appointed as temporary guardian and had been using her prescribed eye drops regularly. Arias also concluded that Stierstorfer did not appear to be mentally incapacitated and seemed capable of independent living, financial management, and medication management.

We conclude that there was not clear and convincing evidence that Stierstorfer was incapacitated, the first requirement before a court may appoint a guardian under § 30-2620(a). Accordingly, the trial court did not err in failing to appoint a guardian for Stierstorfer.

[4] Malloy also assigns that the trial court erred in failing to find that Stierstorfer required a full guardianship. Section 30-2620(a) states that if the court finds that a guardianship should be created, it shall be a limited guardianship unless there is clear and convincing evidence that a full guardianship is necessary. Because we have concluded that the trial court did not err in failing to appoint a guardian for Stierstorfer, we need not address whether a full guardianship was necessary. See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018) (appellate court is not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in finding that a guardianship was not necessary for Stierstorfer, but that a conservatorship was necessary. Accordingly, the trial court's order is affirmed.

Affirmed.