IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP & CONSERVATORSHIP OF KENI A.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP AND CONSERVATORSHIP OF KENI A.,
AN INCAPACITATED PERSON.

KENI A., APPELLANT,

V.

LINDA K., APPELLEE.

Filed June 21, 2022.    No. A-21-652.

Appeal from the County Court for Saunders County: ANDREW R. LANGE, Judge. Affirmed.

Keni A., pro se.

Jennifer D. Joakim for appellee.

Thomas J. Klein, guardian ad litem.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Keni A., a person found to be incapacitated, appeals pro se from an order of the county court for Saunders County establishing a limited guardianship in the area of medical decision-making and appointing Linda K. as permanent guardian for that purpose. For the reasons that follow, we affirm.

## BACKGROUND

The present proceedings were initiated on July 22, 2020, when Linda, Keni's biological mother, filed a petition for appointment of guardian and conservator alleging that Keni was

incapacitated "as a result of mental deficiencies which prevent her from fully understanding her mental health and wellbeing, care and treatment and management of her financial affairs." The petition further alleged that Keni was hallucinating and fabricating events and then communicating such fabrications to medical personnel as well as various law enforcement agencies. In addition to seeking appointment as permanent guardian and conservator, Linda further sought appointment as temporary guardian and conservator pending a final hearing and requested that a guardian ad litem be appointed for Keni.

On July 23, 2020, the county court entered an order appointing Linda as temporary guardian and conservator, set the matter for hearing on September 21, and appointed a guardian ad litem for Keni. On September 14, the county court entered an order requiring Keni to undergo a psychological evaluation. The court further ordered that "by the agreement of the parties and on the recommendation of the Guardian ad Litem, the temporary conservatorship is hereby dismissed." The court rescheduled the final hearing on the matter of guardianship for December 14 and extended the temporary guardianship pending that hearing. On September 23, the court, on its own motion, appointed a lawyer to represent Keni in the guardianship proceedings. Thereafter, the court continued the guardianship hearing twice more, each time extending the temporary guardianship. The court ultimately set the matter of guardianship for hearing on July 12, 2021.

The final hearing on the matter of guardianship was held on July 12, 2021, and five witnesses, including Linda herself, testified. The first witness to testify was the doctor who conducted the court-ordered psychological evaluation, Dr. Leland Zlomke. After laying foundation regarding Zlomke's qualifications and experience, the court accepted Zlomke as an expert witness in the field of psychology. Thereafter, Zlomke testified to his expert opinion that Keni "suffers from a delusional disorder which is an other psychotic disorder under the classification system." Zlomke further opined that Keni's mental state "significantly interferes with some of her decision-making." Zlomke testified that his opinion was based on an interview with Keni, psychological testing results, his review of records, and "collateral interviews with a number of other persons" including Linda, Keni's daughter, Keni's attorney, Keni's primary care physician, and the guardian ad litem.

With regard to the information he received from Keni, Zlomke testified that he found her reporting "to be superficial, inaccurate, and probably delusional." Zlomke testified that the chief complaint raised by Keni in the interview was "ongoing sexual assaults and crimes that she felt were occurring to her . . . sometimes multiple times daily, multiple times per week." Zlomke acknowledged that the reports "were certainly horrific," adding that "if those things were happening, obviously, then, there would be a tremendous amount of trauma." However, Zlomke observed that as the interview went on, Keni's "emotions were incongruent with those kinds of reports" which made him question whether Keni's reports were based in reality. Accordingly, Zlomke testified that the bulk of the interview was spent on determining the cause of what Zlomke referred to as Keni's "systematized persecutory delusion."

Zlomke ultimately diagnosed Keni with a delusional disorder and an "unspecified trauma disorder." Zlomke testified that treatment for Keni's diagnoses would entail psychiatric medication and intensive psychotherapy. With regard to the issue of guardianship, Zlomke opined that Keni will likely need help to "make informed decisions in her own best interest about receiving treatment and consistently and persistently engag[ing] in treatment, because it's going to be

uncomfortable and it's going to be long-term, and progress is going to be relatively slow." Zlomke testified that he administered a MacArthur Competence Assessment Tool for Treatment Decisions, which is a nationally recognized tool for assessing competence in the area of treatment decisions, and Keni showed "significant weaknesses" in appreciating and understanding her condition and treatment options.

After Zlomke, Linda testified on her own behalf. Linda testified to her belief that a limited guardianship in the area of medical decision-making is necessary to facilitate the treatment options discussed by Zlomke. Linda emphasized that rather than seeking treatment, Keni had become consumed with investigating and prosecuting the supposed perpetrators of the various assaults Keni believed she was experiencing. Linda acknowledged some challenges to her serving as Keni's guardian, not least of which being that Linda lives in Illinois and her relationship with Keni had become somewhat strained during the time that she had served as temporary guardian. However, Linda also testified that she was not aware of anyone else who would be willing to serve as Keni's guardian.

After Linda, three deputies from the Saunders County Sheriff's Office were called to testify to their experiences investigating Keni's criminal allegations. First, Deputy Shannon Sydik testified that she had been assigned to track Keni's calls to the sheriff's office and record a brief synopsis of each call. Sydik testified that Keni made 33 calls in 2019, 316 calls in 2020, and 94 calls thus far in 2021. Sydik testified that Keni usually called "to report trespassing, rape, sexual assault, weaponized chemical assaults, canine counter training, torture and terrorism to her and to the canines, cyber attacks, [and] chemical warfare." Sydik testified that both the sheriff's office and Nebraska State Patrol had previously investigated some of Keni's allegations but none of the claims had been corroborated or substantiated, and no arrests had ever been made. Sydik added that officers no longer respond to Keni's residence unless she specifically requests that an officer respond, as it is a drain on resources to continue responding when there has not been any substantiating evidence of the reports.

Thereafter, Deputy James Haiar testified that as part of the investigation into Keni's allegations, the sheriff's office obtained medical records from local hospitals which included evidence of two "SANE" examinations conducted in July 2019 and June 2020 respectively. Haiar testified that a SANE examination is "an examination done by a specialized nurse in the hospital for sexual assaults." Haiar testified that both SANE examinations revealed no evidence of sexual assault, and Haiar was not aware of any other credible evidence of Keni's allegations. Finally, Deputy Jeff Morris testified that he was responsible for handling evidence that gets collected and brought to the sheriff's office. Morris testified that he had handled between 12 and 15 pieces of evidence in connection with the investigations into Keni's allegations, including at least five or six "sexual assault kits" that he sent to the Nebraska State Patrol Crime Lab for processing.

Neither the guardian ad litem nor counsel for Keni adduced any additional evidence. In closing, counsel for Linda argued that the evidence clearly illustrated that Keni was suffering from a delusional disorder. She acknowledged that Linda cannot force Keni to take medication or seek treatment, but that she can continue encouraging Keni to do so, and, as guardian, can stay abreast of Keni's progress and treatment goals. The guardian ad litem stated that he found Zlomke's report to be "well considered" and that he would "defer significantly" thereto. He further opined that "it's clear [Keni] does have some mental health conditions that need to be dealt with; that [Keni] does

not make appropriate decisions for herself in that regard." Ultimately, the guardian ad litem stated, "I think it's clear a guardianship's needed in this case" and added that he had no concerns directly related to Linda serving in that position.

Counsel for Keni argued that a guardianship was not necessary to merely "encourage" Keni to obtain treatment and observed that "there are a whole lot of people who have untreated mental health illnesses and they are not having a guardianship forced upon them." She also noted that Linda lives in Illinois and emphasized that Keni believes there is additional evidence corroborating the assault allegations that had yet to be collected. With regard to the allegation that Keni was refusing to obtain treatment, counsel argued that Keni "has engaged in therapy over the years," adding that "she may not do it as often as people would direct her to do, but she does do that on an as-needed basis."

After hearing the testimony and considering the evidence, the county court found that a permanent, limited guardianship for medical decision-making was necessary and was the least restrictive alternative available. The court stated that "a lot of my order is going to be based on the fact that I believe the testimony of Dr. Zlomke that [Keni] suffers from a delusional disorder, and is, therefore, unable to make necessary decisions as to what is as-needed." The court further found that it was in the best interests of Keni that such a guardianship be imposed and that Linda was the proper person to serve as permanent limited guardian. Thus, on July 14, 2021, the court entered an order to that effect. Thereafter, Keni's attorney was granted leave to withdraw, and Keni filed this appeal pro se.

ASSIGNMENTS OF ERROR

Keni's brief sets forth a lengthy section labeled "Statements of Errors," which encompasses over 37 pages and dozens of numbered paragraphs containing numerous factual allegations and arguments. Thus, it is difficult to ascertain precisely what actions of the county court Keni contends were erroneous. Although reading her brief as a whole, it appears Keni seeks to challenge the sufficiency and credibility of the evidence relied upon by the county court.

STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

ANALYSIS

At the outset, we note that Keni's brief failed to adhere to Neb. Ct. R. App. P. § 2-109 which was in effect at the time it was filed in November 2021, regarding the requirements of a brief on appeal. Specifically, Keni's brief fails to set forth a separate and concise statement of each error which she contends the county court made. Moreover, while Keni provided a brief "Summary of Argument" section, such is not followed by any argument. While we acknowledge that Keni filed this appeal pro se after her former attorney was allowed to withdraw, the Nebraska Supreme Court has repeatedly held that a pro se party is held to the same standards on appeal as one who is

represented by counsel. See e.g. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). In order to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy this requirement. *Id*.

The present case is unique in that Keni is not only proceeding pro se, but she has also been found incapacitated, at least with regard to medical decision-making. Nevertheless, even if we assumed without deciding that an incapacitated appellant proceeding pro se could be held to a lesser standard on appeal, the issue remains that it is exceedingly difficult to adduce any coherent analytical argument from Keni's brief. Generally speaking, it appears that Keni takes issue with the court's reliance on Zlomke's psychological evaluation, indicating that certain "egregious errors" resulted in the "nullification" of that evaluation. Brief for appellant at 47. However, Keni fails to support these conclusory assertions with any coherent argument or evidence.

We have thoroughly reviewed the testimony and evidence in the record, including the medical records and additional materials that were admitted under seal. We find ample foundation for Zlomke's testimony, and the court explicitly found him to be a credible and reliable expert witness. The guardian ad litem also found Zlomke to be credible and deferred significantly to Zlomke's evaluation in recommending that a guardianship be imposed. Altogether, our review of the record reveals that the decision of the county court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Accordingly, the order of the county count appointing Linda as Keni's permanent limited guardian in the area of medical decision-making is affirmed.

CONCLUSION

For the foregoing reasons, the order of the county court is affirmed.

AFFIRMED.