CITY OF YORK, APPELLANT, V. YORK COUNTY
BOARD OF EQUALIZATION, APPELLEE.
664 N.W.2d 456

Filed July 11, 2003.   No. S-02-500.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

Randy R. Stoll, York County Attorney, for appellee.

William G. Blake and Shanna L. Cole, of Pierson, Fitchett, Hunzeker, Blake & Katt, for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The City of York (City) owns land which is adjacent to the York Municipal Airport and is used as a solid waste landfill. The York County Board of Equalization (Board) upheld the county assessor's determination that a 44-acre parcel of the land was not being used for a public purpose and was taxable because the parcel was leased to a private party for agricultural use. The Tax Equalization and Review Commission (TERC) affirmed the Board's decision, and the City appeals.

## SCOPE OF REVIEW

■ Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2002); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002).

■ When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

## FACTS

The solid waste landfill is made up of two tracts of land in York County, Nebraska. One tract is described as the north half, southeast quarter, excluding railway and highway, Section 24, Township 11, Range 3, consisting of approximately 75.99 acres. The second tract, which is leased, is described as the south half, southeast quarter, excluding highway and excluding Section 24, Township 4, Range 3, and excluding Section 24, Township 4, Range 4, consisting of approximately 44 acres.

The landfill is owned and operated by the York Area Solid Waste Agency (Agency), an organization created by the City and York County through an interlocal agreement. The Agency is operated by the City. The landfill receives solid waste, disposes of it in accordance with state and federal regulations, conducts recycling activities, and does ground water monitoring. The landfill is licensed by Nebraska's Department of Environmental Quality (DEQ).

The parcel at issue was acquired via eminent domain after it was discovered that the landfill's monitoring wells needed to be extended. During the eminent domain proceedings, the Agency was required to establish that the land was being taken for a public purpose.

At the time of the hearing before TERC, the leased property was being maintained for future expansion of the recycling facility and for use as cover for solid waste cells. Three of the

landfill's monitoring wells were located on this property. The wells, which are required by DEQ, are approximately 6 feet by 6 feet each. Each of these wells is located along the property line and minimally disturb use of the leased property. The remainder of the property was used for agricultural production and other investigative activities, such as geoprobing and soil borings for ground water monitoring.

The parcel of land held to be taxable is leased to a private party, and it includes 44 acres of tillable irrigated cropland. The land rents for $135 per acre, for a total annual rent of $5,940. The rental income is placed in the landfill fund and used to fund capital and operating expenses.

After the York County assessor reviewed the lease, she determined that the 44-acre parcel was income producing and was therefore not used for a public purpose. She notified the City that the property was taxable. The City filed a protest with the Board, which also found the property to be taxable. The City appealed to TERC, alleging that the primary use of the land was for ground water monitoring required by DEQ and that the agricultural use was an incidental use.

TERC found that the City acquired title to the 44-acre parcel in 1995 through eminent domain. Evidence was received that the leased property was not currently being used or developed for the acceptance of solid waste, but it is expected to be further developed for the receipt of solid waste in approximately 30 years.

TERC concluded that the statutory presumption in favor of the Board had been extinguished but that the burden remained on the City to establish that the subject property qualifies for exemption under Neb. Rev. Stat. § 77-202(1)(a) (Cum. Supp. 2000). TERC noted that the solid waste site was irrigated with equipment owned by the airport and leased to the tenant and that the agricultural use of the property was limited only by future landfill expansion and monitoring well installation and service.

TERC concluded that the landfill expansion was not scheduled to begin for approximately 30 years and that the well monitoring process created minimal disturbance to the agricultural use. It found that the City adduced no evidence to establish that the monitoring wells, which are located at the edge of the leased land, must be expanded now or in the future and that the City

failed to demonstrate that the lease is for a public purpose. TERC concluded that the City had failed to establish that the use of the leased land qualifies as a public purpose, and it affirmed the decision of the Board denying the protest.

## ASSIGNMENTS OF ERROR

The City of York assigns as error: (1) TERC erred in finding that the use of the property did not qualify as a public purpose under § 77-202(1)(a); (2) TERC erred in finding that the primary use of the property was agricultural; (3) TERC erred in finding that the lease of the land to a private party for agricultural use is in direct competition with all other land available for lease for agricultural purposes; and (4) TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately.

## ANALYSIS

Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

The City asserts that TERC erred in finding that the use of the leased property did not qualify as a public purpose under § 77-202(1)(a). Related to this argument is the City's contention that TERC erred in finding that the primary use of the property was agricultural. Property of a governmental subdivision that is leased to a private party must be leased at fair market value for a public purpose in order to be exempt from property taxes. See § 77-202(1)(a).

Section 77-202(1)(a) defines a public purpose as use of the property "to provide public services with or without cost to the recipient, including the general operation of government[,] public works[, and] public health and welfare." The City argues that the landfill is an "operation of government" that serves a statutorily defined purpose.

The Integrated Solid Waste Management Act (Act), Neb. Rev. Stat. §§ 13-2001 to 13-2043 (Reissue 1997 & Cum. Supp. 2000),

provides that local governments, including counties and municipalities, are "best positioned to develop efficient solid waste management programs." See § 13-2002(5). Each county and municipality is required to provide for disposal of solid waste generated within its jurisdiction. See § 13-2020(1). The governing body of a county or municipality "may make all necessary rules and regulations governing the use, operation, and control of a facility or system." § 13-2020(4). Section 13-2023 states in part: "A county, municipality, or agency may, by ordinance or resolution, adopt regulations governing collection, source separation, storage, transportation, transfer, processing, treatment, and disposal of solid waste within its solid waste jurisdiction area as necessary to protect the public health and welfare and the environment."

The Agency, which operates the landfill, was created in 1993 by the City and York County. In March 2000, the City leased 44 acres of the landfill to a private party for agricultural use at $135 per acre. The parties agree the lease represents the fair market value of the property. The question is whether this parcel is used for a public purpose.

This 44-acre parcel was acquired after ground water contamination was discovered on the property. DEQ required the Agency to extend the ground water monitoring of the landfill to this tract. In December 1995, the Agency commenced eminent domain proceedings in the York County Court. The condemnees subsequently appealed the decision to the York County District Court. One of the issues on appeal from the condemnation was whether the taking was for a public purpose and necessary for public use.

The district court ultimately concluded that the Agency had authority pursuant to the Act to acquire the land by eminent domain for the purpose of conducting the investigation of ground water contamination. Therefore, it is clear that the property at issue was acquired for a public purpose. However, we must also determine whether the subsequent leasing of the property for agricultural purposes subjects the property to taxation.

"The primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation." *Doane College v. County of Saline*, 173 Neb. 8, 11, 112 N.W.2d 248, 250 (1961). If the lease of the property for

agricultural use is incidental to the primary or dominant use, then the property is not subject to taxation.

The Act authorizes a county, municipality, or agency to purchase, develop, maintain, and improve solid waste facilities. See § 13-2021. Landfills operated by local government entities must have long-range plans to ensure sufficient capacity to meet future waste disposal requirements because state law requires landfills to have adequate capacity for solid waste disposal until 2014. See § 13-2032(1)(a). Therefore, long-range planning is necessary to ensure adequate capacity.

The leased property at issue is directly adjacent to the existing landfill. Part of the property is used to monitor ground water contamination from the existing landfill. Areas of the property will be used to supply cover dirt for existing cells as they become filled with solid waste. When necessary, the property will become a cell for solid waste.

The landfill began receiving waste disposal in 1996. When an active waste disposal cell is filled, an additional area in the landfill is opened for receipt of waste. At some time in the future, dirt will be removed from the leased property to cover a waste disposal cell. It was estimated that cells directly north of the leased property would require cover dirt from the leased property in 25 to 30 years.

Obviously, a site used for waste disposal must be large enough to provide for expansion. The land surrounding the landfill must provide dirt to cover the waste deposited there. The acquisition of land adjacent to an existing landfill for future waste disposal is a measure of good planning in order to meet the future needs of the landfill. Unless landfills are properly managed, the waste creates hazards to the environment and the public health.

Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003). We conclude that renting the property for $135 per acre for agricultural purposes is incidental to the land's primary purpose as a landfill, the purpose for which the land was condemned. The 44 acres of land at issue was acquired for use as a landfill at a total cost of $216,191. The fact that the Agency derives income from the leased property does not change its primary purpose.

Thus, TERC erred in finding that the leased property is not being used for a public purpose and in determining that it is taxable.

The City's final argument is that TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately. Because of our decision that the land is exempt from taxation, it is not necessary for us to reach that issue, and we decline to do so.

## CONCLUSION

This court's review of a decision by TERC is conducted for errors appearing on the record of the commission. See, § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). We find that TERC's decision does not conform to the law. The primary purpose of the property at issue is for use as a solid waste landfill, and the lease for agricultural use is incidental to this purpose. Thus, TERC's decision is reversed, and the cause is remanded with directions that TERC reverse the decision of the Board finding the property to be taxable.

REVERSED AND REMANDED WITH DIRECTIONS.