IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
MARIE J. TROBOUGH, AN INCAPACITATED AND PROTECTED PERSON.
LORI BAIN, INTERESTED PARTY, APPELLANT, V.
GLORIA TROBOUGH CLIPPINGER, GUARDIAN
AND CONSERVATOR, APPELLEE.

676 N.W.2d 364

Filed March 26, 2004. No. S-03-668.

Susan J. Spahn, Christopher S. Wallace, and Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellant.

Robert J. Murray and Angela M. Pelan, of Lamson, Dugan & Murray, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This appeal arises out of a conservatorship proceeding in the Douglas County Court. The appellant objected to the final accounting of the conservator and requested that the conservator be surcharged and relieved of her duties as to administration of the conservatorship. The county court denied the appellant's request, approved the final accounting, terminated the conservatorship, and discharged the conservator. The court also directed that issues raised by the appellant with respect to certain personal property be transferred to the probate court to be considered as part of the probate proceedings.

## SCOPE OF REVIEW

■ An appellate court reviews conservatorship proceedings for error appearing on the record made in the county court. See *In re Guardianship of Zyla*, 251 Neb. 163, 555 N.W.2d 768 (1996).

■ When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *City of York v. York Cty. Bd. of Equal.*, 266 Neb. 311, 664 N.W.2d 456 (2003).

## FACTS

On January 27, 2000, Gloria Trobough Clippinger (Clippinger) filed a petition requesting that she be appointed the guardian and conservator for her mother, Marie J. Trobough. At the time, Trobough was 89 years old and residing in an assisted living facility in Omaha, Nebraska. The petition alleged that Trobough was incapacitated and unable to manage her property and affairs because she suffered from dementia and disorientation. It was alleged that Trobough's net worth was between $400,000 and $500,000. The Douglas County Court subsequently appointed Clippinger to act as Trobough's guardian and conservator. Clippinger filed annual reports and accountings on March 23, 2001, and March 28, 2002.

After Trobough's death on January 10, 2003, her granddaughter, Lori Bain, filed several pleadings with regard to the conservatorship. In her petition to void the transfer of personal property and for an accounting, Bain alleged that Trobough had collected many valuable antiques and was regarded as one of the premier collectors of dolls in the Omaha area. The petition alleged that Clippinger had moved certain property of Trobough's to Tennessee and purchased such property for $5,000. Bain alleged that the payment was grossly inadequate to compensate for the value of the personal property, which she estimated exceeded $100,000. The petition claimed that the transfer of this personal property was tainted by a substantial conflict of interest and should, therefore, be voided. Bain requested that the county court require Clippinger to account for all of Trobough's personal property that was moved to Tennessee.

In support of her petition, Bain filed an affidavit from Greg Ford, an auctioneer, who averred that he was involved in a 2-day

auction of Trobough's dolls and personal property and that the gross sales from the auction were $109,456.50, including $93,073 for the doll auction. Ford stated that the items sent to Tennessee were higher quality antiques than those sold at auction. He averred that the value of these items was between $100,000 and $150,000.

Clippinger requested that the county court consolidate the conservatorship proceedings with the probate proceedings that were pending in county court. On March 7, 2003, the court held a hearing regarding the motion to consolidate and ordered Clippinger to file her final accounting.

On March 24, 2003, Clippinger filed her final accounting and a petition requesting that the conservatorship be terminated and that she be discharged from her duties as guardian and conservator. Bain subsequently traveled to Tennessee to inventory the disputed property, and she then filed objections to the final accounting.

Bain also petitioned for removal and surcharge of the conservator and appointment of a successor conservator. She asserted that Clippinger had failed to account for personal property which Clippinger had transferred to herself without court approval and asked that the county court void the transfer. Bain also alleged that Clippinger had failed to account for certificates of deposit totaling in excess of $80,000. In a supplemental petition for approval of the final accounting, Clippinger included the certificates of deposit, which were valued at more than $90,000.

The record indicates that a hearing was scheduled for May 13, 2003; however, this proceeding evolved into a mere discussion among the parties and the county court regarding the problems created by the simultaneous conservatorship and probate proceedings. At that time, the court indicated that it approved the accounting as to the monetary assets and then stated: "The objections as to the personal property, these dolls and figurines in those arguments, are transferred to the probate case. I am ordering them transferred now."

In an order dated May 14, 2003, the county court approved the final accounting as to the monetary assets, terminated the conservatorship, discharged Clippinger of her responsibilities as conservator, and released the surety. The court denied Bain's

petition seeking to remove Clippinger as conservator, to surcharge the conservator, and to appoint a successor conservator. The court also directed that the dolls, figurines, and other personal property be transferred to the personal representative of Trobough's estate in a manner so as to preserve the issues raised by Bain until the court could consider them as a part of the probate proceedings.

Pursuant to the county court's order, Clippinger, as personal representative of Trobough's estate, filed a receipt for all of the assets listed on the final accounting in the conservatorship. Included with this receipt was an inventory of personal property indicating a transfer of dolls valued at $39,375; furniture valued at $16,367; figurines, jewelry, and "whatnot" valued at $7,175; a list of missing items valued at $19,040; a list of Hummel figurines valued at $64,725; another 5 pages of inventory of dolls; and 16 pages of inventoried items with no value listed. Bain timely filed this appeal from the May 14, 2003, order of the county court.

## ASSIGNMENTS OF ERROR

Bain's assignments of error can be summarized as follows: The county court erred (1) in discharging Clippinger from her responsibilities as conservator; (2) in approving the final accounting in the conservatorship, even though it did not account for all of Trobough's assets; (3) in transferring conservatorship assets to the probate estate without addressing the issues surrounding those assets; (4) in not voiding Clippinger's purchase of estate assets; (5) in not appointing a successor conservator; (6) in failing to surcharge Clippinger for the value of the estate assets she unlawfully purchased or failed to account for; and (7) in failing to award attorney fees to an interested person whose actions preserved assets of the estate.

## ANALYSIS

The record in this case consists of the pleadings and responses thereto and a document entitled "bill of exceptions," which is a transcription of the proceedings held on March 7, April 23, and May 13, 2003. No evidentiary hearing was held, and no exhibits were offered into evidence. Because the county court failed to conduct an evidentiary hearing, we vacate the judgment and remand the cause with directions.

We first note that the duties of a conservator are defined in Neb. Rev. Stat. ch. 30, art. 26 (Reissue 1995, Cum. Supp. 2002 & Supp. 2003). Pursuant to § 30-2648, Clippinger, as conservator, was required to account to the county court for her administration of the estate. The law also allows any person interested in the welfare of the person for whom a conservator has been appointed to file a petition asking for an accounting of the administration of the estate. See § 30-2645. In this case, Bain sought the accounting as an interested person. *"Upon notice and hearing,"* the court may give appropriate instructions or may make any appropriate order in response to the interested person's petition. (Emphasis supplied.) See § 30-2645(c).

Our concern is the failure of the county court to conduct an evidentiary hearing to consider Bain's petitions. Instead, the court engaged in discussions with the parties without receiving any evidence to support or refute the issues raised in the pleadings. Without an evidentiary hearing, the court had no basis upon which to enter its orders in the conservatorship proceedings.

An appellate court reviews conservatorship proceedings for error appearing on the record made in the county court. See *In re Guardianship of Zyla*, 251 Neb. 163, 555 N.W.2d 768 (1996). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *City of York v. York Cty. Bd. of Equal.*, 266 Neb. 311, 664 N.W.2d 456 (2003). We conclude that the county court erred as a matter of law in failing to hold an evidentiary hearing and in failing to resolve the disputed issues in the conservatorship proceedings. The orders which the court entered are not supported by competent evidence.

In this case, the record shows that at a proceeding on March 7, 2003, the county court ordered Clippinger to file a final accounting and to close the conservatorship estate by April 23. At the March 7 proceeding, Bain's counsel asked the court to address how it planned to handle the petition to void the transfer of certain personal property by Clippinger. The court responded that the property issues should be considered in the probate proceedings.

The following dialog then occurred:

[Counsel for Bain]: So when he files a final accounting at that time we can object. If we don't see the personal property in there we can come and object on the final accounting?

THE COURT: Sure, you can object to it.

[Counsel]: Okay.

THE COURT: But like I say, since the party is deceased - - -

. . . .

THE COURT: - - - you know, we're going to go ahead and close this out. You know, and I'm not going to destroy any claims that you may have or that you may wish to contest.

. . . .

[Counsel]: But I guess in my own mind I'm thinking that the conservatorship is the place to object to a transfer of personal [property] to conservator.

THE COURT: Yeah, you will be able to make your objections.

[Counsel]: Okay.

On April 23, 2003, the matter was continued until May 13 to give Bain an opportunity to inventory the personal property that had been moved to Tennessee. At the hearing on May 13, the parties appeared before the court and essentially entered into another dialog with regard to their respective positions concerning the conservatorship.

Clippinger's attorney argued that the issues regarding the final accounting in the conservatorship should be transferred to the probate proceedings and that Clippinger should be discharged as conservator and the conservatorship proceedings terminated. Clippinger's attorney agreed to void the transfer of the assets which Bain alleged had been improperly transferred to Clippinger as conservator. Counsel admitted that it had become apparent that the property had somewhat greater value than Clippinger's original estimate.

Bain's attorney alleged that Clippinger had not fully accounted for all of the personal property and argued that property could not

be transferred to the probate estate when it had not been accounted for in the conservatorship.

The county court then stated that based on a review of the records by auditors, it would approve the accounting as to the monetary assets. The court recognized the parties' disagreement as to the dolls and figurines and directed transfer of this dispute to the probate proceedings. The court terminated the conservatorship and awarded attorney fees to Clippinger in the amount of $793.

Bain has properly preserved her objection to the alleged wrongful transfer of personal property to Clippinger, but we are unable to reach the merits of that issue because the county court did not conduct an evidentiary hearing.

Although conservatorship proceedings and probate proceedings may contain similar issues, the actions exist independently of each other. Issues which arise in a conservatorship should be resolved in that venue, and under the facts alleged in this case, the county court should have resolved those issues in the conservatorship proceedings as requested by Bain.

A party who disagrees with a county court's approval of a final accounting and the discharge of a conservator must appeal at that time because the county court's action is a final order. See *In re Guardianship & Conservatorship of Borowiak*, 10 Neb. App. 22, 624 N.W.2d 72 (2001); § 30-2648 ("[e]very conservator must account to the court for his administration of the trust upon his resignation or removal . . . . [A]n order, made upon notice and hearing, allowing a final account adjudicates as to all previously unsettled liabilities of the conservator to the protected person or his successors relating to the conservatorship").

Upon the death of the person for whom a conservatorship has been established, any issues relating to the conservatorship should be finally resolved in that proceeding. Issues relating to a final accounting and discharge of a conservator should not be carried over into the probate proceedings. The death of a person for whom a conservatorship has been established terminates the conservator's authority and responsibility as conservator. See *In re Guardianship & Conservatorship of Borowiak, supra*. However, the termination does not affect the conservator's liability for prior

acts or his obligation to account for funds and assets of the protected person. *Id.* See, also, §§ 30-2622 and 30-2648.

Rather than determining the propriety of Clippinger's actions, the county court attempted to transfer the questions to the probate proceedings. The court erred in not deciding all the issues presented.

■ Any person interested in an estate may ask the conservator to file an accounting or may object to the accounting. § 30-2645. The conservator may, in a proper proceeding, be surcharged with any losses that occurred because of a breach of trust. See § 30-2658. Thus, Bain was within her rights to seek an accounting of the conservatorship.

A conservator should not be discharged prior to a complete accounting of the conservatorship's assets. If a conservator were to be discharged without properly accounting for the assets of the estate, the personal representative would have no recourse available to recover such assets. There would be no remedy to surcharge the conservator who failed to account for certain assets under his or her charge. That result would make the judicial process fundamentally unfair and cause damage to conservatorship proceedings. The issues involving the accounting were properly before the county court in the conservatorship proceedings and should have been decided there.

## CONCLUSION

The May 14, 2003, order of the county court is vacated, and the cause is remanded with directions that the county court is to hold an evidentiary hearing to address the unresolved matters raised in the conservatorship proceedings.

ORDER VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.