IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE CONSERVATORSHIP OF TROBOUGH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE CONSERVATORSHIP OF MARIE J. TROBOUGH, A PROTECTED PERSON.

LORRAINE BAIN, PERSONAL REPRESENTATIVE, APPELLANT,
V.
LYNNE TIMMERMAN-FEES, SPECIAL CONSERVATOR, AND
GLORIA CLIPPINGER, AN INTERESTED PARTY, APPELLEES.

Filed January 20, 2015.    No. A-13-815.

Appeal from the County Court for Douglas County: DARRYL R. LOWE, Judge. Dismissed in part, and in part reversed and remanded with directions.

Susan J. Spahn, of Walentine, O'Toole, McQuillan & Gordon, L.L.P., for appellant.

Kirk E. Goettsch, of Goettsch Law Firm, L.L.C., for appellee Lynne Timmerman-Fees.

Daniel J. Hassing, Robert J. Murray, and Kyle Wallor, of Lamson, Dugan & Murray, L.L.P., for appellee Gloria Clippinger.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

Lorraine Bain challenges a county court order which awarded various parties attorney fees and costs arising from a conservatorship proceeding. For the reasons set out below, we conclude that we have jurisdiction to review only the fees awarded to the original conservator, Gloria Clippinger. As to Clippinger's fee award, we reverse the award and remand the cause to the county court for further proceedings. We also conclude that the county court erred in ordering Bain to post a bond on appeal.

- 1 -

FACTUAL BACKGROUND

This is the seventh appeal in a conservatorship proceeding that has persisted for nearly 12 years after the death of Marie J. Trobough, the protected person. The Nebraska Supreme Court has issued two opinions--one published opinion and one filed memorandum opinion--which contain detailed factual backgrounds of prior events in this case. See *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004) (*Trobough I*); *In re Guardianship & Conservatorship of Trobough*, 271 Neb. xix (Nos. S-05-984, S-05-991, May 18, 2006) (*Trobough II*). For purposes of this opinion, we summarize the history of the conservatorship proceedings from those two opinions before setting out the facts necessary to determine the present appeal.

*Trobough I.*

In early 2000, the Douglas County Court granted Clippinger's petition to be appointed guardian and conservator for her mother, Trobough. Trobough's conservatorship estate consisted of many antiques, with the bulk of the estate's value lying in an extensive doll collection. After her appointment as conservator, Clippinger moved Trobough and some of her personal property into her home in Memphis, Tennessee. Clippinger cared for Trobough in her home until Trobough's death on January 10, 2003.

Following Trobough's death, Bain, Trobough's granddaughter and Clippinger's niece, filed a number of pleadings regarding the conservatorship. Included in these pleadings was a petition to void the transfer of personal property and for an accounting. Bain also petitioned for Clippinger's removal as conservator, surcharge of Clippinger, and appointment of a successor conservator. Bain alleged that Clippinger had moved certain conservatorship property to Tennessee and purchased that property for $5,000, an amount that was grossly inadequate to compensate the conservatorship for the value of the property. Bain presented evidence that Trobough was a well-known doll collector and that the items in Tennessee had a value between $100,000 and $150,000. In addition to Clippinger's improper transaction, Bain also asserted that Clippinger had failed to account for certain certificates of deposit totaling in excess of $80,000 and for Trobough's personal property that she had transferred to herself without having received court approval.

Clippinger requested that the county court consolidate the conservatorship proceedings with the pending probate proceedings in the county court. Thereafter, pursuant to court order, Clippinger filed her final accounting and a petition requesting that the conservatorship be terminated and that she be discharged from her duties as guardian and conservator.

On May 13, 2003, the county court held a purported hearing. However, no evidence was presented at the hearing and instead the county court "engaged in discussions with the parties without receiving any evidence to support or refute the issues raised in the pleadings." *Trobough I*, 267 Neb. 661, 665, 676 N.W.2d 364, 368 (2004). On May 14, the county court entered an order in which it approved the final accounting as to the monetary assets, terminated the conservatorship, discharged Clippinger of her responsibilities as conservator, and released the surety. The county court also denied Bain's petition seeking to remove Clippinger as conservator, to surcharge Clippinger, and to appoint a successor conservator. Finally, the order required Clippinger to transfer the personal property to the personal representative of Trobough's

estate, which was also Clippinger, in an effort to preserve the issues Bain had raised until they were considered in the probate proceedings. Bain appealed from this order.

The Nebraska Supreme Court vacated the county court's order. Because no evidentiary hearing was held, the Supreme Court concluded that the county court had no basis upon which to enter an order and that the order was not supported by competent evidence. The Supreme Court also concluded that the issues Bain presented were properly before the county court and should have been resolved in the conservatorship proceedings. The court continued:

> Upon the death of the person for whom a conservatorship has been established, any issues relating to the conservatorship should be finally resolved in that proceeding. Issues relating to a final accounting and discharge of a conservator should not be carried over into the probate proceedings. The death of a person for whom a conservatorship has been established terminates the conservator's authority and responsibility as conservator. . . . However, the termination does not affect the conservator's liability for prior acts or his obligation to account for funds and assets of the protected person.

*Id.* at 667-68, 676 N.W.2d at 370 (citation omitted). The Supreme Court remanded the cause with directions that the county court hold an evidentiary hearing to address the unresolved issues in the conservatorship proceeding.

*Trobough II.*

While *Trobough I* was pending in the Nebraska Supreme Court, the county court, in an order entered December 4, 2003, appointed Lynne Timmerman-Fees as "successor conservator." Timmerman-Fees was ordered to take possession of all conservatorship assets, including the property in Memphis, and to transfer the property to Omaha, Nebraska, pending the outcome of the appeal. The county court also ordered that Clippinger be removed as conservator.

Following Timmerman-Fees' appointment as special conservator, she made various efforts to ensure the proper storage of the conservatorship's disputed property. Timmerman-Fees' efforts included identifying Theriault's Doll Auctioneers (Theriault's) of Annapolis, Maryland, as an appropriate dealer to store and sell the dolls that were of higher value. Eventually, Theriault's agreed to travel to Lincoln, Nebraska, and, under full insurance coverage, inventory, pack, ship, and store the collectible dolls at their facility in Maryland for a flat fee. This fee was to be reimbursed against a sales commission of 10 percent in the event Theriault's ultimately sold the dolls. The county court entered various orders permitting Timmerman-Fees to utilize Theriault's for the entire doll collection. The county court also approved Timmerman-Fees' efforts to obtain insurance coverage for the conservatorship property while it was held in storage.

At some point, the county court authorized Timmerman-Fees to sell the personal property in the conservatorship. However, that order was later rescinded and Timmerman-Fees was ordered to retain all of Trobough's property. On May 10, 2005, the court ordered Timmerman-Fees to take the action necessary to transfer the conservatorship personal property to the personal representative. Bain had been named successor personal representative on March 8, 2004.

During various proceedings, the county court addressed Bain's allegations of improper gifting of Trobough's personal property while Clippinger was conservator. The court found that

various items had been validly gifted before Clippinger's appointment, while various other items were validly gifted after Clippinger's appointment. The court also determined that Trobough never owned a few of the contested items, and the court validated other gifts Trobough made to other relatives. However, several gifts were set aside due to lack of transfer of possession, while another gift was set aside because the court found that it had been improperly gifted after Trobough's death.

In a July 18, 2005, order, the court determined that Clippinger should be surcharged for various missing items unless those items could be produced. The court also found that various alleged gifts Trobough made during the conservatorship were at least voidable. Clippinger was ordered to file a detailed report containing each gift made during the conservatorship, the date of the gift, and the recipient. There was nothing in the record as to whether this report was filed or as to the resolution of the surcharge issues.

Bain filed two separate appeals following two separate county court orders. In the two appeals, Bain assigned a total of 27 errors, and the Nebraska Supreme Court consolidated the two appeals. In brief summary, Bain took issue with various actions by the county court, including (1) its approval of various Clippinger accountings, (2) its failure to surcharge Clippinger for certain items, (3) its failure to remove Clippinger for cause, (4) its failure to remove Timmerman-Fees as special conservator, (5) its failure to find that Timmerman-Fees had committed various malfeasances and had mismanaged the estate, (6) its approval of the use of Theriault's as the entity to sell various personal property of the estate, (7) its rulings on various evidentiary issues, and (8) its bias against Bain. Timmerman-Fees cross-appealed, asserting that the county court erred in ordering her to facilitate the transfer of the conservatorship to the personal representative.

On May 18, 2006, the Nebraska Supreme Court released a memorandum opinion. The Supreme Court concluded that it had jurisdiction only to address Bain's claim that the county court should have removed Timmerman-Fees as special conservator. On that issue, the court found no error in the county court's decision and affirmed the order. The Nebraska Supreme Court also held that Bain's assertion that the county court erred when it did not remove Clippinger from her position as conservator for cause was moot. As to this issue, the Supreme Court specifically stated:

> However, at the time of the July 18[, 2005,] order from which Bain appeals, Clippinger had already been removed as conservator by orders issued a year and a half earlier. While Clippinger has not yet been released from liability and a final accounting has not been issued as to her conservatorship, the December 4, 2003, order "removed" her as conservator. Thus, other than reports and liability pursuant to the final accounting and discharge, Clippinger has not and will not continue to exercise any powers as conservator.

Finally, the Supreme Court concluded that it was without jurisdiction to review Timmerman-Fees' cross-appeal because it was not a final order and no substantial right was affected.

*Present Proceedings.*

On February 6, 2012, Timmerman-Fees filed an amended and substituted application for approval of special conservator fees and expert witness fees. In her petition, she sought $25,574.82 for services she had provided to the conservatorship. Timmerman-Fees also sought awards of $1,125 and $187.50 for two expert witnesses who had provided services to the conservatorship. Timmerman-Fees attached statements to her application which reflected her time entries for work completed from November 28, 2006, through September 20, 2011. On June 6, 2012, Timmerman-Fees submitted an update to her application. Pursuant to her update, Timmerman-Fees sought an additional $1,987.50, or $27,562.32 total, for services through August 2012. This amount included an estimate of time for her attendance at the upcoming hearings.

Also on February 6, 2012, Timmerman-Fees' attorney, Kirk Goettsch, filed an amended and substituted application for approval of attorney fees. Goettsch sought $81,789.57 in attorney fees and expenses related to his representation of Timmerman-Fees in her role as special conservator from December 11, 2006, through January 19, 2012. Goettsch also amended his application prior to the evidentiary hearing and requested an additional $7,325.10, or $89,114.67 total, for services rendered through May 2012.

On March 6, 2012, Clippinger filed her application for attorney fees and expenses. Clippinger sought $33,775.48 for fees and expenses for legal services rendered by her attorney from July 27, 2007, through June 24, 2009. She also requested $76,335.87 in legal fees and expenses for the period of June 29, 2009, through February 21, 2012. Clippinger clarified in her application that she received a general discharge from her position as conservator on or about December 1, 2009. Thus, Clippinger disclosed that $50,304.87 of her requested fees were incurred after she received the order of discharge. We note that our record does not include any such discharge order entered on or about December 1, 2009.

Bain filed pleadings objecting to all of the above applications for fees. Bain alleged that Timmerman-Fees had exceeded her authority as special conservator by attempting to sell the conservatorship property and had incurred unnecessary fees as a result of her continued refusal to transfer the conservatorship property to the personal representative. Bain further noted that some of the conservatorship property had been stolen before Timmerman-Fees partially completed the transfer. Finally, Bain objected to Goettsch's fee application because Timmerman-Fees did not receive court approval prior to incurring those expenses. As to Clippinger's application, Bain objected on the grounds that Clippinger had been removed as conservator and, therefore, had no basis in law for her fees to be paid from the conservatorship. Bain also claimed that Clippinger's fees and expenses were not fair and reasonable.

Also on March 6, 2012, Bain moved the county court for an order for the immediate transfer of the conservatorship property to the personal representative. Within her motion, Bain alleged that the fees and expenses incurred by the special conservator should be administered through the claims process in the probate estate.

On June 12 and 13, 2012, the county court held an evidentiary hearing on the above fee applications and on Bain's motion for immediate transfer. Both Timmerman-Fees and Clippinger presented evidence during the hearing in support of their applications. Timmerman-Fees'

evidence included expert testimony as to the reasonableness and fairness of her fees. Bain maintained her opposition to each application.

On August 2, 2013, the county court entered an order styled as an "Order Approving Payment of Fees." The court found that Timmerman-Fees had performed valuable fiduciary services on behalf of the conservatorship from November 28, 2006, through February 3, 2009; determined the charges for her services were fair and reasonable; and awarded her $20,343.75. The court also approved Timmerman-Fees' requests for the expert witnesses' fees in the amounts of $1,125 and $187.50. After making further findings that valuable services were provided and the fees were fair and reasonable, the court awarded Timmerman-Fees' attorney, Goettsch, $70,343.75 for the work he performed from November 11, 2006, to January 19, 2012. Clippinger's attorney was awarded $99,099, and the court declared this amount represented the value of the legal services until Clippinger's discharge as conservator.

At an August 20, 2013, hearing, the county court stated on the record that it had reserved ruling on Bain's motion for immediate transfer. Specifically, the court announced that

> [i]t seems like only the lawyers are being paid. And I understand that's one reason why I specifically did not transfer the assets to . . . Bain, is because at this particular point, after all this litigation and so forth, and the contentiousness among the parties, I want to make sure that there is an estate and that people get paid before people take control.

On August 23, 2013, the court entered three separate orders. Clippinger's fee award was reduced to $59,806.48 pursuant to an order nunc pro tunc. This reduction reflected Clippinger's admission that a portion of her fees had been incurred after she received her general discharge from her position as conservator. The court also amended its fee order to omit payment of Bain's attorney fees. The court reasoned that Bain had not properly brought an application for fees before the court. Finally, the court denied Bain's motion to proceed on appeal without posting a supersedeas bond.

Bain filed a notice of appeal on September 23, 2013.

## ASSIGNMENTS OF ERROR

Bain assigns nine errors in her brief. Upon review of these assignments of error, we conclude they can be condensed into five. Bain argues that the county court erred when it (1) awarded attorney fees and costs to Clippinger; (2) awarded attorney fees and costs to Timmerman-Fees; (3) allowed the awarded attorney fees and costs to be paid from the conservatorship, instead of as claims in the estate proceeding; (4) failed to order the immediate transfer of possession of property to the personal representative in the estate action; and (5) ordered the personal representative to post a bond prior to appeal.

## STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When reviewing questions of

law in a probate matter, an appellate court reaches a conclusion independent of the determination made by the court below. *In re Estate of Greb*, 288 Neb. 362, 848 N.W.2d 611 (2014).

The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

ANALYSIS

*Jurisdiction.*

Both Timmerman-Fees and Clippinger assert that this court is without jurisdiction to consider this appeal. They claim that the order awarding fees was not a final order. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014).

For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Id*. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *Id*.

Conservatorship proceedings are special proceedings. See *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006); *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). Therefore, the next question is whether the fee order affected a substantial right. A substantial right under § 25-1902 is an essential legal right, not a mere technical right. *In re Estate of Gsantner, supra*. A substantial right is involved if an order "'affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant before the order from which an appeal is taken.'" *Id*. at 228, 846 N.W.2d at 652, quoting *In re Estate of McKillip, supra*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *In re Estate of Gsantner, supra*.

In asserting that the county court's order awarding attorney fees and costs is not an appealable order, Clippinger and Timmerman-Fees place considerable emphasis on the Nebraska Supreme Court's decision in *In re Estate of Lehman*, 135 Neb. 592, 283 N.W. 199 (1939). In that case, the Supreme Court addressed the finality of orders awarding executors' fees. The two orders in that case had awarded partial fees for the executors' actions for two separate periods of time. The Supreme Court determined that these orders were "interlocutory orders and not final orders" because each was a partial fee and did not constitute a final award. *Id*. at 601, 283 N.W. at 203. In so ruling, the court did not create any bright-line rule; it specified that the holding was specifically limited to the orders in question in that case.

The Nebraska Supreme Court's recent opinion in *In re Estate of Gsantner, supra*, provides further guidance on the issue of whether orders awarding fees in probate proceedings constitute final orders. That case presented a situation in which the county court awarded a personal representative's fee in the amount of $25,000 following the personal representative's

request for 5 percent of the gross estate, to be distributed equally between attorney fees and the personal representative fee. The Supreme Court concluded this order was a final order because it finally determined the personal representative's claim for reasonable compensation. The court noted that although the personal representative's service was not yet complete at the time of the award, the order in question was final because it did not include any language indicating that the award was subject to later revision or augmentation.

In *In re Guardianship & Conservatorship of Forster, supra*, this court had the opportunity to consider a challenge to various orders granting attorney fees. The appeal was perfected after the county court had entered an order approving the third successor guardian and conservator's final accounting and inventory. On appeal, we were called upon to review five awards of attorney fees: two awards to prior guardians and conservators, an award to the protected person's attorney, and two awards of fees to the third successor guardian and conservator. Applying the rationale from *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014), we first determined the awards to the two prior guardians and conservators and the award to the protected person's attorney were final orders because their services were complete and the awards were not subject to later revision at the time the orders were entered.

However, the same was not true for the awards of fees to the third successor guardian and conservator. The third successor guardian and conservator applied for and was awarded fees for two separate periods: approximately $17,000 for services performed from December 8, 2011, to January 26, 2012, and approximately $28,000 for services performed from January 26 to March 10, 2012. However, the third successor guardian and conservator's services were still ongoing at the time the fees in question were awarded. Therefore, we concluded these awards were not final and appealable at the time they were entered and did not become final and appealable until the court entered its final order terminating the guardianship and conservatorship and discharging the guardian and conservator.

Applying the Supreme Court's decision in *In re Estate of Gsantner, supra*, and our decision in *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014), to the present case, we determine that we do not have jurisdiction to review the county court's order with respect to the fees awarded to Timmerman-Fees and her attorney. Timmerman-Fees continues to provide services to the conservatorship and has not filed a final accounting or inventory. In addition, Timmerman-Fees' compensation is subject to later augmentation depending on the remaining work she must perform in resolving the remaining issues in the conservatorship. Further, all conservatorship property has not yet been transferred to the personal representative. The Supreme Court made clear in *Trobough I* that "[i]ssues which arise in a conservatorship should be resolved in that venue . . . ." 267 Neb. at 667, 676 N.W.2d at 369. Because there are remaining issues in the conservatorship that require resolution, we conclude that the portions of the county court's awarding fees to Timmerman-Fees and Goettsch are not final orders.

However, we reach the opposite conclusion with respect to the county court's award of attorney fees to Clippinger. Because Clippinger has been discharged from her role as conservator, her services are complete and she will not have any claim to augment her award. Thus, under the reasoning of *In re Estate of Gsantner, supra*, and *In re Guardianship & Conservatorship of Forster, supra*, this portion of the county court's order is final because it

- 8 -

occurred in a special proceeding and affects a substantial right. We will move on to address Bain's objections to this award.

*Award of Attorney Fees to Clippinger.*

As noted in the factual background above, the county court initially awarded Clippinger $99,099 in attorney fees. In awarding those fees, the court found that Clippinger's attorneys had provided valuable legal services on behalf of the conservatorship until the time of Clippinger's discharge as conservator. This award was later reduced to $59,806.48 pursuant to an order nunc pro tunc to reflect only those fees that were incurred before Clippinger's discharge as conservator.

Bain challenges this fee award on the basis that Clippinger incurred these fees after she had been discharged as conservator. To support this challenge, Bain points to the county court's December 4, 2003, order which stated that Clippinger had been removed as conservator. The Nebraska Supreme Court's memorandum opinion in 2006 also acknowledged that Clippinger had been "removed" as conservator in 2003. Therefore, Bain argues that there is no basis in law to uphold the county court's award of Clippinger's attorney fees.

A party may recover attorney fees in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees. See *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013). When attorney fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling we will not disturb on appeal unless the court abused its discretion. *Id*. See, also, *In re Guardianship & Conservatorship of Cordel*, 274 Neb. 545, 741 N.W.2d 675 (2007) (allowance of conservator fees is largely matter of discretion, and reasonable value of services is question of fact). Neb. Rev. Stat. § 30-2643 (Reissue 2008) authorizes a court to assess costs and fees for a court-appointed person in a conservatorship proceeding.

Clippinger contends that her attorneys are entitled to fees because she was not officially discharged as conservator until 2009. She asserts that she continued to have fiduciary duties to the estate until her discharge and that her attorneys performed valuable work representing her interests as conservator. However, the record presented to us on appeal does not contain any order showing the date of Clippinger's discharge in 2009. The only references in the record to a 2009 discharge order are found in Clippinger's attorney's testimony at the fee application hearing and from entries in Clippinger's attorneys' "statement of professional services rendered," which was received as an exhibit by the county court at the fee application hearing.

At the hearing on the fee application, Clippinger's attorney disagreed that Clippinger had been removed as conservator in 2003. The following exchange took place on cross-examination when Bain's counsel asked Clippinger's attorney to read from the Nebraska Supreme Court's memorandum opinion in *Trobough II*:

> [Clippinger's counsel:] "However, at the time of the July 18th order from which Bain appeals, Clippinger had already been removed as conservator by orders issued a year and a half earlier".
>
> [Bain's counsel:] So isn't that true that the order under appeal had been entered by the Court July 18th, 2005, is that correct?
>
> [Clippinger's counsel:] I think the Court misspoke in that statement.

[Bain's counsel:] This is the Nebraska Supreme Court.

[Clippinger's counsel:] I don't care who it is. I think the Court misspoke.

Following the above exchange, Bain presented Clippinger's attorney with the December 4, 2003, order from the county court. Then, the following dialog took place:

[Bain's counsel:] I'm handing you what has been marked as Exhibit 1009. Do you recognize that document?

[Clippinger's counsel:] Yes, I do.

[Bain's counsel:] And what does the first numbered paragraph -- well, first tell us, what is this document?

[Clippinger's counsel:] This is an order of the Court dated December 4, 2003.

[Bain's counsel:] And could you read the single line that starts with, "It is therefore"?

[Clippinger's counsel:] "The Court states it is therefore ordered that . . . Clippinger is removed as conservator."

[Bain's counsel:] And what's the date of that document again?

[Clippinger's counsel:] December 4th, 2003.

[Bain's counsel:] So Judge Marcuzzo ordered that your client was removed as conservator on December 4th, 2003, and the Supreme Court, in its opinion, reaffirms that, hey, the lower court was right not to remove [Clippinger] for cause because she had been removed a year and a half ago.

[Clippinger's counsel:] Are you asking me a question?

[Bain's counsel:] So hadn't she been removed as conservator?

[Clippinger's additional counsel]: Objection to the form of the question and argumentative.

THE COURT: Overruled.

[Clippinger's counsel:] I'd have to go back and look at this, but she certainly had not received a discharge, and until she received a discharge she continued to have responsibilities to the estate.

Clippinger confirmed at the fee application hearing that all conservatorship property had been taken out of her possession and control in December 2003. After Clippinger's removal as conservator in 2003, there is no basis for a finding, at least from the record before us, that she continued to owe any fiduciary duty to the conservatorship. Neb. Rev. Stat. § 30-2644 (Reissue 2008) provides that the county court may remove a conservator and appoint another conservator. The successor conservator succeeds to the title and powers of the predecessor. Based on this section, when Clippinger was removed as conservator and Timmerman-Fees was appointed as special conservator, Clippinger no longer held any conservator powers. Therefore, without any conservator powers, it follows that Clippinger no longer owed any duty to the conservatorship.

We are mindful of the Supreme Court's 2006 opinion which referenced Clippinger's removal and the remaining actions she would have in filing an accounting and obtaining a discharge. The record does not indicate why there was such a lengthy delay between Clippinger's removal as conservator in 2003, the Supreme Court's recognition in 2006 that all that remained for Clippinger to do was file an accounting and be discharged, and the purported

- 10 -

discharge in 2009. Because Clippinger no longer owed a fiduciary duty to the ward after her removal in 2003, the only actions that she or her attorneys would have needed to take were to complete and file an accounting and obtain a discharge. Yet, Clippinger's fee application for July 2007 through June 2009 contains 44 pages. During this time period, 236.7 hours were charged for a total of $32,516. An additional $1,259.48 was also incurred as a result of numerous disbursements. Although we are unable to determine exactly which fees and costs were associated with Clippinger's accounting and discharge, it is clear from our review of her fee application that many other activities were undertaken, including numerous law clerk projects and memorandums on various issues and conversations with Goettsch regarding the next steps to take in the case. The application for Clippinger's discharge was not even prepared until July 2009.

In support of its award of attorney fees to Clippinger, the county court stated that Clippinger's attorneys had provided valuable legal services to the conservatorship. Because this award appears to go beyond the fees and costs necessary to complete and file an accounting and obtain a discharge, the only actions that the Supreme Court found in 2006 were remaining to be done by Clippinger, we must conclude that the county court's award of attorney fees to Clippinger was an abuse of discretion. We therefore reverse that portion of the county court's order and remand the cause for further proceedings with directions to determine what fees and costs were reasonably necessary to complete and file an accounting and obtain a discharge.

*Supersedeas Bond.*

Bain argues that the county court erred in requiring her to post a supersedeas bond in order to appeal the county court's fee award order. Bain asserts that she is exempt from the bond requirement in Neb. Rev. Stat. § 30-1601 (Cum. Supp. 2014) because she appeals in her capacity as personal representative of Trobough's estate. Both Clippinger and Timmerman-Fees contend that Bain is required to post a bond because she does not hold any official capacity within the conservatorship.

A supersedeas bond is mandatory in a probate appeal unless the appellant is a party specifically exempted from the requirement pursuant to § 30-1601(3). Section 30-1601(3) provides:

> When the appeal is by someone other than a personal representative, conservator, trustee, guardian, or guardian ad litem, the appealing party shall, within thirty days after the entry of the judgment or final order complained of, deposit with the clerk of the county court a supersedeas bond or undertaking in such sum as the court shall direct, with at least one good and sufficient surety approved by the court, conditioned that the appellant will satisfy any judgment and costs that may be adjudged against him or her, including costs under subsection (6) of this section, unless the court directs that no bond or undertaking need be deposited. If an appellant fails to comply with this subsection, the Court of Appeals on motion and notice may take such action, including dismissal of the appeal, as is just.

Statutory language is to be given its plain and ordinary meaning, and interpretation will not be used to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *ML Manager v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014). An appellate

court's duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Rice v. Bixler*, 289 Neb. 194, 854 N.W.2d 565 (2014). It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *ML Manager v. Jensen, supra.*

Based on the clear language of § 30-1601(3), Bain should not have been required to post a bond in order to appeal. She is clearly the personal representative of Trobough's estate and § 30-1601(3) exempts a personal representative from the probate appellate bond requirement. There is no language in the section which distinguishes the type of representative and the character of the proceeding from which an appeal is taken. We reverse that portion of the county court order requiring Bain to post a bond for the appeal.

*Bain's Remaining Assignments of Error.*

Bain's remaining assignments of error do not require discussion. First, because we have reversed the award of attorney fees to Clippinger and have determined that the award of fees to Timmerman-Fees and her attorney is not a final order, we need not address Bain's argument with respect to paying attorney fees and costs from the conservatorship. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Trust Created by Nabity*, 289 Neb. 164, 854 N.W.2d 551 (2014). Next, because the county court reserved ruling on the transfer of possession of the property to the personal representative in the estate action, we likewise do not address this assigned error. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Robinson v. Dustrol, Inc.*, 281 Neb. 45, 793 N.W.2d 338 (2011).

## CONCLUSION

We conclude that we do not have jurisdiction to address the fee awards to Timmerman-Fees and her attorney. We dismiss that portion of Bain's appeal. However, we reverse the county court order awarding attorney fees to Clippinger and remand the cause for further proceedings with directions to determine what fees and costs were reasonably necessary to complete and file an accounting and obtain a discharge. We also reverse the county court's order requiring Bain to post a supersedeas bond before prosecuting an appeal.

DISMISSED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

- 12 -